UNITED STATES of America,
Plaintiff-Appellee,

v.

Bradford BURT, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

William L. DENNIS,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Roy Dean SNARR and James F. Rounsavall, Defendants-Appellants.

Nos. 80–1235, 80–1236 and 80–1242.

United States Court of Appeals,
Ninth Circuit.

May 27, 1980.

Victor Sherman, Nasatir, Sherman & Hirsch, Howard L. Weitzman, Los Angeles, Cal., Wallace B. Farrell, San Bernardino, Cal., Gregory E. Cabrera, Riverside, Cal., for defendants-appellants.

Andrea Sheridan Ordin, U.S. Atty., Kathleen P. March, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

## OPINION

Before WALLACE, ANDERSON and FLETCHER, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

The defendants (Bradford Burt, William L. Dennis, James F. Rounsavall, and Roy Dean Snarr) bring this pretrial appeal from the denial of their motion to dismiss based on vindictive prosecution grounds. In an order filed April 21, 1980, we summarily affirmed the denial of their motion so that the trial could proceed. This opinion explains our reasons for affirming.

### I. BACKGROUND

In early 1979, various California state law enforcement agencies began the investigation which eventually led to the indictments in the present case.[1] The investigation was

---

1. The state agencies involved in the investigation included: the California Department of Justice Bureau of Narcotics Enforcement; California Highway Patrol; Riverside County Sheriff's Department; San Bernardino County Sheriff's Department; Los Angeles County Sheriff's Department; Los Angeles Police Department; Palm Springs Police Department; Corona Police Department; Anaheim Police Department; and the Fontana Police Department.

conducted exclusively by state officers through the use of state facilities and state search warrants.[2] The California Department of Justice Bureau of Narcotics Enforcement (BNE), supervised the investigation.

This investigation revealed evidence of a large-scale drug manufacturing and distributing operation. The defendants allegedly operated three different laboratories for manufacturing amphetamine. One was located in Corona, California, one was near Hinkley, California, and the other was in Palm Springs, California. The indictment alleges that approximately 26 pounds of amphetamine was manufactured at the Hinkley lab, and another 26 pounds at the Palm Springs site. In addition, during the time that Snarr and Rounsavall were allegedly operating the Corona lab, they also allegedly distributed approximately 40 pounds of amphetamine and 20,000 to 30,-000 tablets of methaqualone (also known as quaaludes).

The state agents obtained approximately twenty-five search warrants which authorized their searches of the different lab sites, storage facilities, residences, and offices used by the defendants.[3] These searches resulted in the seizure of several pounds of amphetamine, large amounts of money, as well as equipment used in a drug manufacturing operation.

On March 16, 1979, a criminal complaint was filed against Burt, Dennis, Rounsavall, Snarr, and Michael J. Vaccarino[4] in San Bernardino County Municipal Court, alleging a single conspiracy in violation of Calif. (Health & Safety) Code § 11379, and four possession counts against the different defendants. We are told that with these charges, some of the defendants faced possible sentences of only two to four years.

In addition, Dennis, along with his wife, was charged with three counts of drug possession in the Riverside County Municipal Court. These possession charges resulted from a search of the Dennis residence which had been undertaken as part of the general investigation. Nevertheless, the drugs involved in the Riverside proceeding were not connected with the manufacturing and distributing conspiracy which formed the basis of the San Bernardino charges.

In April of 1979, the BNE agent who was in charge of the California investigation met with a federal Drug Enforcement Administration agent to discuss possible prosecution under the federal statutes. This was followed by another meeting in May which was attended by two Assistant United States Attorneys from the Central District of California (Perry and March). Perry explained that his office would be able to devote more time and resources to the investigation and prosecution of the defendants. He further explained that a federal trial could proceed much quicker than a state trial. And finally, Perry explained how Burt, the alleged leader, could be prosecuted under 21 U.S.C. § 848 (the continuing criminal enterprise statute) which carried much more severe penalties than any state law.[5] There was no discussion of attempting to avoid state law, the discussion focused on how § 848 fit the crime more closely than state law. It was decided

---

2. Federal agents did not become involved until after the state had filed charges against the defendants.

3. The warrants which were involved in this case were issued by the following courts:
 (a) San Bernardino County Superior Court:
 (1) Warrant No. 3369;
 (2) Warrant No. 3362;
 (3) Warrant No. 3363;
 (4) Warrant No. 3374;
 (5) Warrants Nos. 3378A through M;
 (6) Warrant No. 3379;
 (7) Warrant No. 3380;
 (8) Warrant No. 3381;
 (9) Warrant No. 3394;

 (b) Los Angeles Municipal Court:
 (1) Warrant No. 989;
 (2) Warrant No. 950;
 (c) Riverside Municipal Court:
 (1) Warrant No. 3333.

4. Although Vaccarino was named as a defendant in the federal proceeding, he did not join in this appeal.

5. Burt apparently had acquired considerable property from the manufacturing enterprise which is subject to forfeiture only under the federal statute.

that March would review the state search warrants to determine whether they were sufficient for a federal prosecution.

There was another meeting on June 13 which was attended by Perry, March, the state and federal agents, and a Deputy District Attorney from San Bernardino County. The San Bernardino Deputy agreed to halt the state case and defer to the federal prosecution, providing the state BNE agreed. The BNE agreed to submit the case to federal prosecution on June 20. And so, as of June 20, 1979, there was an agreement between the state and federal authorities that the defendants would be federally prosecuted.

Meanwhile, no one had conferred with the Riverside County prosecutor who was handling the possession case against the defendant Dennis and his wife. On July 20, 1979, the Riverside County Municipal Court granted a motion to suppress the evidence which had been seized at the Dennis residence based on faulty search warrants (San Bernardino warrants Nos. 3378D, 3378E). After the Riverside County prosecutor told the court that he would be unable to proceed without the suppressed evidence, the court then dismissed the possession charges against Dennis and his wife.

Not only was the Riverside County prosecutor not told about the agreement between the state and federal authorities, but the defendants also were not told that the state had agreed to discontinue its prosecution.

Because of this, the defendants filed a lengthy motion to suppress in the San Bernardino proceeding and noticed a hearing for October 22, 1979. The San Bernardino prosecutor appeared on October 22 and moved to have the complaint against the defendants dismissed because the "prosecution was unable to proceed."

On January 17, 1980, the federal grand jury returned a twelve-count secret indictment against the defendants.[6] All of the defendants were charged with a conspiracy to manufacture, distribute, and possess amphetamine and methaqualone, as well as with possession of approximately 18 pounds of amphetamine. The other counts consisted of individual and joint charges against the different defendants, depending upon their degree of involvement in the manufacturing operation. And, Burt was charged with operating a continuing criminal enterprise (§ 848) in the last count.

The defendants were arraigned on March 3, 1980, and trial was set for April 8. On March 24, Burt and Dennis filed a motion to dismiss based on vindictive prosecution. Rounsavall and Snarr joined in this motion. The district court held hearings on all of the different motions which had been filed by the defendants on March 31, April 1, and April 2. The clerk's minutes indicate that the district judge denied the vindictive prosecution motion on April 2. On April 9, the defendants filed notices of appeal to

**6.** In the first count, all of the defendants (Burt, Dennis, Rounsavall, Snarr, and Vaccarino) are charged with a conspiracy to manufacture, possess, and distribute amphetamine and methaqualone. (21 U.S.C. §§ 846, 841(a)(1)). The second count charges Rounsavall, Snarr, and Vaccarino with manufacturing approximately 18 pounds of amphetamine (21 U.S.C. § 841(a)(1)), and Burt and Dennis with aiding and abetting them (18 U.S.C. § 2). The third count charges all of the defendants with the possession of the 18 pounds of amphetamine (21 U.S.C. § 841(a)(1)). The fourth count charges Rounsavall and Snarr with possession of approximately 3.6 pounds of amphetamine with intent to distribute (21 U.S.C. § 841(a)(1)). The fifth count charges Rounsavall with possession of approximately 4.1 pounds of amphetamine (21 U.S.C. § 841(a)(1)). The sixth count charges Burt with a conspiracy to manu-

facture and distribute amphetamine with several unindicted co-conspirators (21 U.S.C. §§ 846, 841(a)(1)). The seventh count charges Burt with manufacturing approximately 26 pounds of amphetamine (21 U.S.C. § 841(a)(1)). The eighth count charges Burt with possession of the 26 pounds of amphetamine with the intent to distribute (21 U.S.C. § 841(a)(1)). The ninth count charges Burt with manufacturing approximately 29 pounds of amphetamine (21 U.S.C. § 841(a)(1)). The tenth count charges Burt with possession of the 29 pounds of amphetamine with the intent to distribute (21 U.S.C. § 841(a)(1)). The eleventh count charges Burt with distributing approximately 1 pound of amphetamine (21 U.S.C. § 841(a)). And the twelfth count charges Burt with a continuing criminal enterprise (21 U.S.C. § 848).

this court from the denial of their vindictive prosecution claim. On April 10, the district judge informed the parties that he had not yet denied the vindictive prosecution claim. At that time the district judge set trial for April 15. The defendants then applied to this court for a stay of trial pending appeal. On April 14, this court granted defendants "motion for a stay [of trial] until such time as this court can consider [defendants'] appeal from the district court's denial of their motion to dismiss for vindictive prosecution." On April 15, the district court denied the defendants' vindictive prosecution motion nunc pro tunc as of April 2, and set trial for April 22.

On April 17, the government made an emergency motion for summary affirmance of the district court so that the trial could proceed as scheduled on April 22. On April 21, this court entered an order summarily affirming the district court.[7]

## II. *JURISDICTION*

■ This court recently held that the denial of a motion to dismiss based on vindictive prosecution grounds was immediately appealable as a final decision under 28 U.S.C. § 1291. *United States v. Griffin*, 617 F.2d 1342, 1343–1346 (9th Cir. 1980). We found that the same considerations which led the Supreme Court to hold that the denial of a motion to dismiss on double jeopardy grounds was appealable before trial (*Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)), were "present in an order denying a motion to dismiss on vindictive prosecution grounds." *Griffin, supra*, at 1345. We therefore have jurisdiction to hear the defendants' appeal,

prior to trial, from the denial of their motion to dismiss based on vindictive prosecution. However, this court does not have jurisdiction on a pretrial appeal, to consider any of the other grounds (*see* n.7, *supra*) raised by the defendants in their motion to dismiss. *See United States v. Solano*, 605 F.2d 1141 (9th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 677, 62 L.Ed.2d 652.

■ The defendants suggest that there is a jurisdictional problem presented by the procedural sequence of events in this case. We disagree. They contend that the district court did not have jurisdiction on April 15 to set the trial date for April 22. They reason that the filing of their notices of appeal on April 9 deprived the court of jurisdiction and that this court's stay order of April 14 prevented the district court from setting a new trial date. First of all, this court's order of April 14 only stayed the trial until this court could consider the appeal based on vindictive prosecution. It did not deprive the district court of jurisdiction. Since this court summarily affirmed the appeal and remanded the case to the district court on April 21, nothing in our earlier stay order conflicted with the course of proceedings in the district court. The notice of appeal did not become effective until the district court had entered its final decision on the vindictive prosecution claim. This was done on April 15 nunc pro tunc, which then gave effect to the earlier notices of appeal. At the same time that this was done, the district court set the April 22 trial date, which was within its authority. No jurisdictional problem is presented by the procedural sequence of events in this case.

7. In this order we said:
"Treating the Government's motion for summary affirmance of the order of the district court refusing to dismiss the indictment as running against all of the defendants Burt, Dennis, Snarr, and Rounsavall, on the ground of vindictive prosecution, it is granted.

"The rulings of the trial court concerning the refusal to disqualify, violation of the 'Petit Policy,' and the guidelines pertaining to prosecutions under 21 U.S.C. § 848, are not appealable orders at this time and may not be made pendant to the vindictive prosecution appeals.

"Treating the response of defendant Dennis as a request for additional time to respond, it is denied.

"The motions of defendants Snarr and Rounsavall for an additional stay of proceedings are denied.

"These cases are forthwith remanded to the district court for further proceedings. The mandate shall issue now and no petition for rehearing will be entertained.

"An opinion will follow in due course."

See Song Jook Suh v. Rosenberg, 437 F.2d 1098, 1101 (9th Cir. 1971); Ruby v. Secretary of United States Navy, 365 F.2d 385, 388–389 (9th Cir. 1966) (en banc), cert. denied, 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442.

## III. VINDICTIVE PROSECUTION

 The right to due process of law is violated where the government increases the severity of alleged charges in response to the exercise of constitutional or statutory rights. United States v. Rosales-Lopez, 617 F.2d 1349, 1357 (9th Cir. 1980); United States v. DeMarco, 550 F.2d 1224, 1227 (9th Cir. 1977), cert. denied, 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85; see generally Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). After all, penalizing a person for doing what the law plainly allows him to do "is a due process violation of the most basic sort." Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). Vindictive prosecution is generally found where the government has occasion to re-indict or re-try a defendant after the exercise of a procedural right. Rosales-Lopez, supra, at 1357. Nevertheless, there are limits to this general rule. For instance, in Bordenkircher, supra, the Supreme Court held that a prosecutor could re-indict a defendant under a more severe charge after the defendant has rejected an offer to plead to a lesser charge. Bordenkircher, supra, 434 U.S. at 363–365, 98 S.Ct. at 667–669.

 When a defendant attempts to have the charges dismissed based on an allegation of vindictive prosecution, then the defendant must make the initial showing of an "appearance of vindictiveness." See Griffin, supra, at 1347; United States v. Groves, 571 F.2d 450, 453 (9th Cir. 1978). In most cases, this involves a showing that the prosecutor has re-indicted the defendant and increased the severity of the charge, after the defendant has exercised a statutory or constitutional right. See De-Marco, supra, 550 F.2d 1224; United States v. Ruesga-Martinez, 534 F.2d 1367 (9th Cir. 1976). The defendant does not have to demonstrate that the prosecution in fact acted with a malicious or retaliatory motive. Griffin, supra, 617 F.2d at 1346; Groves, supra, 571 F.2d at 453. Instead, once the defendant has made this prima facie showing, then vindictiveness may be inferred. Griffin, supra, at 1346; Ruesga-Martinez, supra, 534 F.2d at 1369.

At this point, the burden then shifts to the prosecution to prove that the increase in the severity of the charges did not result from any vindictive motive. Griffin, supra, at 1347; Ruesga-Martinez, supra, 534 F.2d at 1369. Instead, the prosecutor, to rebut the presumption, must show that his decision to re-indict with more severe charges was "justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness." Griffin, supra, at 1347.

Returning to the facts of the present case, the procedural sequence of events went something like this. All of the defendants were initially charged with conspiracy in the state court proceeding in San Bernardino County. In addition, Dennis was charged with the possession offenses in another state court proceeding in Riverside County. Dennis' possession charges had resulted from a search of his house which had been conducted as part of the conspiracy investigation. In July, Dennis was successful in having the evidence suppressed from the house search because of the faulty search warrant. Because of this, the Riverside County prosecutor dismissed the charges against Dennis. Meanwhile, the defendants moved to suppress the evidence in the San Bernardino proceeding based on what they alleged were the faulty search warrants which had been used to secure the evidence underlying the conspiracy charge. Before the motion could be heard, the San Bernardino prosecutor moved to dismiss the conspiracy charges against the defendants. Three months later, the United States Attorney for the Central District of California obtained indictments based on the same facts which had supported the state conspiracy charge in San Bernardino County. The federal charges admittedly carry much more severe penalties than the earlier state charges.

At first blush, this factual situation has some of the earmarks of an appearance of vindictive prosecution. The first charges against the defendants were dismissed after one of them had successfully exercised his right to challenge one search, and all of them had filed their motions to challenge the other searches. They were then reindicted under charges carrying more severe penalties. Nevertheless, there is a serious question as to whether there could ever be an "appearance of vindictiveness" in this factual situation, and a review of the record shows that the government successfully refuted any possible "appearance."

We note, but do not decide, several problems raised by the defendants' argument. First of all, it must be remembered that the State of California filed the initial charges against the defendants, and the federal government filed the later charges which carry the more severe penalty. Thus, two independent prosecutors' offices filed charges against the defendants. All of the cases where vindictive prosecution has been found involved the decision of a *single* prosecutor's office to attempt to re-indict or re-try a defendant. *See Groves, supra*, 571 F.2d 450; *DeMarco, supra*, 550 F.2d 1224;[8] *Ruesga-Martinez, supra*, 534 F.2d 1367.

 This brings up the much more serious question arising from the two sovereignties which filed the different charges in the present case.[9] It must be remembered that "a federal prosecution is not barred by a prior state prosecution of the same person for the same acts." *Abbate v. United States*, 359 U.S. 187, 194, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922); *Solano, supra*, 605 F.2d at 1143. In addition, a state finding as to the constitutionality of a search is not binding on a federal court if federal charges are then brought against the same person. *Elkins v. United States*, 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); *United States v. Smith*, 595 F.2d 1176, 1179 (9th Cir. 1979); *United States v. Garret*, 565 F.2d 1065, 1068 (9th Cir. 1977), *cert. denied*, 435 U.S. 924, 98 S.Ct. 1487, 55 L.Ed.2d 517.

 In spite of the various problems which are raised because two independent prosecutor's offices filed charges against the defendants, we choose not to address these questions in this opinion. These questions are left for another case on another day. Instead, assuming that vindictive prosecution could apply to the present case, we have no difficulty in holding that the government successfully rebutted any possible inference of vindictiveness which could have arisen on the facts of this case.

The decision to proceed against the defendants in federal court was made *before* the defendants had asserted any procedural or constitutional rights in the state proceedings. Following three months of discussions, the state and federal authorities decided in June of 1979 to federally prosecute the defendants. It was not until July of 1979 in the Riverside County proceeding, and October of 1979 in the San Bernardino proceeding, that the defendants attempted to assert their rights by having the evidence against them suppressed. Therefore, since the decision to re-indict the defendants under the federal statutes was made prior to the defendants' suppression motions, it could not have been based on a purpose to punish the defendants for the assertion of any rights.

Moreover, the decision to re-indict the defendants in federal court was justified by sufficiently independent reasons to dispel

---

8. In *DeMarco, supra*, the defendant was first indicted in the District of Columbia. After the defendant successfully had his case transferred to the Central District of California, the government brought more charges against him (in retaliation for the transfer). This case did not involve two different prosecutors' offices. It was the Watergate Special Prosecution Force, not the different United States Attorneys' Offices, which conducted the prosecution.

9. The Eighth Circuit has summarily rejected the claim that vindictive prosecution may be found where the defendant is first tried and convicted in state court, then tried and convicted in federal court based on the same criminal conduct. *United States v. Sellers*, 603 F.2d 53, 57–58 (8th Cir. 1979).

any possible appearance of vindictiveness. The United States Attorney's office could devote more time and resources to the case. A federal trial would proceed more quickly than a state trial. The federal penalties were more severe, and, in view of the large scope of this conspiracy, more appropriate to fit the crime. Contrary to the defendants' assertions, there was no attempt to circumvent what the defendants refer to as the more liberal California law.

There is absolutely no evidence (nor even an assertion) of a retaliatory motive based upon any prior dealings between the state prosecutor and the defendants and their counsel. The choice to abandon the state and to undertake federal prosecution was a rational and reasoned decision which the respective prosecuting authorities were free to make in these circumstances.

## IV. *CONCLUSION*

This court has no quarrel with the right of defendants to take pretrial appeals from the denial of double jeopardy and vindictive prosecution motions. After all such a procedure is necessary to safeguard the vital constitutional interests protected by those doctrines. *See Abney, supra*, 431 U.S. at 660–662, 97 S.Ct. at 2040–2041; *Griffin, supra*, at 1345. Nevertheless, we believe that this case illustrates the potentially disruptive effect such procedures can have on our trial courts.

As a general rule, when a party files a notice of appeal from a final appealable order, then jurisdiction is conferred upon the court of appeals and the trial court is without the power to proceed. *Moroyoqui v. United States*, 570 F.2d 862, 864 (9th Cir. 1977). Because of this, a defendant may be able to unilaterally obtain a trial continuance by merely appealing from the denial of a purely frivolous or dilatory motion to

dismiss based either on double jeopardy or vindictive prosecution grounds.

In this case, notice of appeal was filed six days before the originally scheduled trial date. As already pointed out, this notice was ineffective to deprive the district court of jurisdiction since no final appealable order had yet been made by the district judge. *See Song Jook Suh, supra*, 437 F.2d at 1101; *Ruby, supra*, 365 F.2d at 388–389. It was not until the originally scheduled trial date that the trial was rescheduled for a week later, the vindictive prosecution claim was denied, and the defendants' notices of appeal became effective. The government then moved to summarily affirm the denial of the vindictive prosecution claim because it was faced with the uncertain prospect of having an appeal pending in a case which was set for trial within a week. Since the government had issued subpoenas to over sixty witnesses for the trial, this panel gave expedited treatment to the defendants' appeal and the government's motion for summary affirmance.

██ While no one was at fault for the manner in which this appeal was taken, it does point out the potentially disruptive effect that such appeals can have in our already congested trial courts.[10]

In sum, the decision as to whether federal or state charges should be brought against the defendants was within the discretion of the federal and state authorities who were involved in this case. The manner and method by which the decision to federally prosecute the defendants was reached did not involve any of the type of prosecutorial conduct that is proscribed by the due process clause. The district court's denial of the defendants' motion to dismiss based on vindictive prosecution grounds is affirmed.

IT IS SO ORDERED.

---

10. The Supreme Court has stated that it is within the supervisory powers of the courts of appeal to establish summary procedures to weed out the frivolous and dilatory pre-trial appeals which may be taken in criminal cases. *See, Abney, supra*, 431 U.S. at 662 n.8, 97 S.Ct. at 2041. The Fifth Circuit has recently adopted procedures for dealing with dilatory pre-trial double jeopardy appeals. *United States v. Dunbar*, 611 F.2d 985, 988–989 (5th Cir. 1980)

(en banc). While this panel does recognize the need for procedures such as those adopted by the Fifth Circuit, a decision as to what those procedures should entail must await another case. However, we suggest that district judges consider the imposition of sanctions for the filing of frivolous and dilatory motions to dismiss based on vindictive prosecution grounds and for the filing of frivolous appeals from the denial of such motions.