**UNITED STATES of America, Plaintiff,**

v.

**Richard Thomas McGIFFEN, Daniel Elton Hayes, and Thomas William Ballester, Defendants.**

**No. CR F 83–93–EDP.**

United States District Court,
E.D. California.

Dec. 21, 1983.

---

Donald B. Ayer, U.S. Atty., Brian C. Leighton, Asst. U.S. Atty., Fresno, Cal., for plaintiff.

James Homola, Fresno, Cal., for Richard Thomas McGiffen.

Steve Mensel, Asst. Federal Defender, Fresno, Cal., for Daniel Elton Hayes.

Michael J. Ward, Modesto, Cal., for Thomas William Ballester.

## MEMORANDUM DECISION

PRICE, District Judge.

The following factual background may be helpful in understanding the discussions of the numerous motions that are presently pending before the Court in this matter.

The defendants in this case were variously charged by complaint filed in the Municipal Court of the County of Stanislaus, State of California, on September 7, 1982, with violations of the California Health and Safety laws pertaining to the possession and sale of controlled substances. The matter proceeded to preliminary examination on November 2, 1982, at which the prosecution had agreed to produce a witness, to wit: one who served as a confidential informant in the matter leading to the arrest of all three defendants. The defendant Ballester's motion to dismiss was granted.

The prosecution promptly filed a second complaint against the defendant Ballester, charging him with one count of § 11352 of the California Health and Safety Code. Defendant Ballester filed a second motion to dismiss pursuant to California Penal

Code § 995, which was granted on May 23, 1983. Finally, on July 14, 1983, while similar motions were pending on behalf of the defendants McGiffen and Hayes, the Stanislaus County Superior Court, upon motion by the prosecution, ordered the action to be dismissed as to McGiffen and Hayes. The minute order reflected that the basis for the state prosecutor requesting dismissal was the fact that federal prosecution was now pending on the same charges.

After the arrest of these defendants, and subsequent to the first dismissal of Ballester, Lt. Brashears of the Stanislaus County Drug Enforcement Unit (hereinafter S.C.D.E.U.) began making informal inquiry of his acquaintances in Federal law enforcement with reference to the differences between Federal law and California state law as to the necessity for producing a confidential informant as a prerequisite to prosecution of drug related charges. These inquiries were occasioned by the fact that Brashears efforts to locate the confidential informant had not borne fruit, and having been faced with one dismissal, he was concerned that a second dismissal was imminent.[1]

On May 26, 1983, three days after the dismissal against the defendant Ballester, Brashears approached the federal law enforcement officials, specifically Agent Rick Horn of the Drug Enforcement Administration, to solicit the taking over of the case by that federal agency for the consideration of the possibility of federal prosecution. A copy of that letter is annexed to this Memorandum Decision as Exhibit A.

David Florence was the Deputy District Attorney in Stanislaus County assigned to this case. He was connected with the case during the period of time that the second motion to dismiss was filed on behalf of the defendant Ballester. After the second motion to dismiss, Florence telephoned one Michael Ward, the then and present attorney for defendant Ballester, and warned him that if he persisted in pursuing his motion to dismiss, and if successful, that the matter would be turned over to Federal authorities for possible Federal prosecution.

Florence, as was Brashears, was vaguely aware that the penalties imposed by Federal law for the comparable offenses were substantially more severe than those provided under California state law. He also recalls that he talked to Brashears about the possibility of instituting Federal prosecution, but was vague as to whether or not he recommended it. He agreed, however, that he certainly did not discourage such a step by Brashears, nor did he forbid it. Florence was adamant that at no time did he discuss the matter with any Federal official.

Brashears, too, was of the opinion that Federal prosecution would result in more severe penalties than the state charges which were filed against the defendant Ballester. Brashears stated that the reason Federal authorities were not involved in the initial arrest leading to this case was the short period of lead time the authorities had in order to set up the surveillance and arrests.

After the second dismissal,[2] apparently the Stanislaus District Attorney did not consider an appeal of the state court action as legally supportable. Inasmuch as the dismissal of state charges became final as to Brashears, Federal prosecution was the

---

1. California Penal Code § 1387 provides, in pertinent part as follows: "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony or it is a misdemeanor charged together with a felony and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995, or if it is a misdemeanor not charged together with a felony, except in those felony cases, or those cases where a misdemeanor is charged with a felony, where subsequent to the dismissal of the felony or misdemeanor the judge or magistrate finds that substantial new evidence has been discovered by the prosecution which would not have been known through the exercise of due diligence at or prior to the time of termination of the action."

2. All of the early focus of this memorandum decision is on defendant Ballester. The state charges against McGiffen and Hayes were not dismissed until seven days after the federal indictment was returned on July 7, 1983.

only avenue by which Ballester could be held to answer to these charges.

After Brashears' letter to Agent Horn, Brashears and the case agent, Stanislaus County Sheriff's Officer Harper, met to discuss the case with Assistant U.S. Attorney Brian Leighton in Fresno on June 24, 1983. Sgt. Harper came back a second time and testified before the Grand Jury.

Prior to coming to Fresno, Brashears testified that he did not precisely know the Federal penalties for the comparable drug charges.

As noted above, at the time of the original contact, the case against McGiffen and Hayes was still viable in the state court because their motions to dismiss had not been heard. Brashears stated, however, that it was never his intention to fragment the case, that is, to ask the Federal agencies to take only part of it, and to proceed with the balance of the case in state court. The legal advice he was getting from the state prosecutor's office was to the effect that the state charges against McGiffen and Hayes would ultimately have to be dismissed for the same reason that the charges were dismissed against Ballester. Significantly, Brashears testified that he was never aware Deputy District Attorney Florence's telephonic threat to Ward about Federal prosecution until the matter arose in Federal court.

On July 7, 1983, the Grand Jury of the Eastern District of California sitting in Fresno returned a four-count indictment charging one count of conspiracy to possess and distribute cocaine, and two counts of possessing a controlled substance with intent to distribute, and one count of aiding and abetting interstate travel to promote unlawful activity. McGiffen and Hayes were arrested as they left the courtroom in Stanislaus County after dismissal of the charges against them. Defendant Ballester voluntarily appeared as a result of a criminal summons being served upon him.

After becoming aware of the pending motions in this matter, Assistant U.S. Attorney Brian Leighton filed a declaration and response thereto. A photocopy of that declaration is attached to this Memorandum Decision as Exhibit B.

The defendants have filed multiple motions in this case, either personally or by joinder. The discussion of the motions will be considered in order.

## I

*Motion to Dismiss Due to Pre-Accusation Delay Pursuant to Fed.R.Crim.P. 48(b)*

Rule 48(b) provides, in pertinent part, as follows:

> If there in unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

The defendant seems to argue that the Federal government should be charged with all of the delay that has occurred in this case from the commencement of criminal proceedings in state court in September of 1982.

It is hornbook law that the state arrest alone does not trigger Rule 48(b) because the state arrest does not require the defendant to answer to the Federal District Court. *See United States v. Brand,* 556 F.2d 1312 (5th Cir.1977), *rehearing denied* 561 F.2d 831, *cert. denied* 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 763.

At the outside limits, this case was under consideration by Federal authorities less than 60 days before an indictment was returned against these defendants. Hence, the defendants' motion to dismiss on Rule 48(b) grounds is denied.

## II

*Dismissal For Violation of Defendants' Sixth Amendment Speedy Trial Rights*

*Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) is the leading and most recent Supreme Court pronounce-

ment on a defendant's Sixth Amendment rights to a speedy trial. The Court concluded that in this area that:

A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

It would be significant to note at this time that because of the dissatisfaction of Congress with the inability of the Supreme Court to fix hard and fast rules of the time within which a defendant must be brought to trial under the Sixth Amendment to the Constitution, attempted to fill the void by the passage of the Speedy Trial Act (18 U.S.C. § 3161, et seq.). The flexibility of the Sixth Amendment admonition concerning speedy trial is best illustrated by *United States v. Marion,* (1971) 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, which presented the following facts: Defendants were indicted on 19 counts of consumer fraud allegedly committed from March 15, 1964 until February 6, 1967. The date of the indictment was April 19, 1970. The defendants were not charged or otherwise subject to formal restraint prior to indictment. The District Court dismissed the indictment on the grounds that the defendants must have been prejudiced by the delay in bringing the prosecution. The Supreme Court reversed. The majority opinion, which is signed by four members of a seven member court, held that:

1. The Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an accused, which, in the present case was on the date of the indictment, and

2. The possibility of prejudice to the defendants from the delay in bringing the indictment was not, in itself, enough to demonstrate that the defendants could not receive a fair trial as required by the due process clause.

Justice Douglas joined by Justices Brennan and Marshall, concurred in the judgment. They would hold that the Sixth Amendment speedy trial guarantee applies to pre-indictment delays as well as post-indictment delays. However, they argued that the reversal of the district court's dismissal was not proper in the instant case because the defendant had not shown an actual prejudice because of the delay.

■ As demonstrated above, there has been no unusual pre-indictment delay in the instant case. Further, even if the federal prosecutors were charged with the period of time involved in the state courts, this Court would point out that the duration of the state court proceedings were contributed to in large part by the fact that the defendant had almost continuous motions on file from the date of his original incarceration. As pointed out by the Court in Part III, *infra,* since the informant Pickens has been found, any possible prejudice to the defendants has been eliminated.

### III

*Defendants' Motion for Dismissal Due to Loss of Witness and Loss of Evidence*

This motion by the defendants was based on the unavailability of the informer, one Arthur Pickens. During the pendency of the motion, Mr. Pickens was returned to the district and is under continuing Court order to return to the district upon the request of either the government or any of the defendants. The matter being moot, the defendants' motion to dismiss on this ground is denied.

### IV

*Defendants' Motion Re Vindictive Prosecution*

The doctrine of vindictive prosecution, although of fairly recent origin, has evolved rapidly. A summary of that evolution is more than adequately addressed in *United States v. Goodwin,* 457 U.S. 368,

102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), and need not be repeated here. Suffice it to say that the early cases considered by the Supreme Court involved prosecutorial or judicial responses to a criminal's exercise of his or her right to appeal. This case, of course, involves the criminal defendant's exercise of rights pre-trial, and the prosecutorial response thereto.

In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), a five to four decision, the Supreme Court held that the due process clause of the Fourteenth Amendment was not violated when a state prosecutor carried out a threat made during plea negotiations to reindict the defendant on more serious charges to which he was plainly subject to prosecution if the defendant did not plead guilty to the offense as originally charged. The Court went further and stated that it was immaterial that the prosecutor was in possession of the evidence necessary to justify the increased charges at the time the original indictment was filed. *Bordenkircher*, of course, involved a single prosecutor, or at least a single prosecutorial office.

*United States v. Goodwin, supra*, arose in the District of Columbia. Goodwin was originally arrested and charged with several misdemeanor and petty offenses, including assault. After arraignment, the defendant fled the jurisdiction and was later rearrested and returned to the appropriate magistrate's court for trial.

Upon Goodwin's return, his case was assigned to an attorney for the Department of Justice who was detailed temporarily to try petty crime and misdemeanor cases before the Magistrate. The attorney in question did not have authority to try felony cases or to seek indictments from the grand jury. Goodwin initiated plea negotiations with the prosecutor, but later advised the government that he did not wish to plead guilty and desired a trial by jury in the district court. Thereupon, the case was transferred to the district court and responsibility for the prosecution was assumed by an Assistant United States Attorney. Approximately six weeks later, and after reviewing the case and discussing it with several parties, the Assistant U.S. Attorney obtained a four-count indictment charging the defendant with one felony count of forcibly assaulting a federal officer and three related counts arising from the same incident.

Goodwin responded with a motion to dismiss which was granted by the district court. The court of appeals reversed. In summarizing the reasoning of the court of appeals, the Supreme Court stated:

> Although the Court of Appeals readily concluded that "the prosecutor did not act with actual vindictiveness in seeking a felony indictment," 637 F.2d [250] at 252 [ (4th Cir.1981) ], it nevertheless reversed. Relying on our decisions in *North Carolina v. Pearce, supra,* and *Blackledge v. Perry, supra,* the court held that the Due Process Clause prohibits the Government from bringing more serious charges against a defendant after he has invoked his right to a jury trial, unless the prosecutor comes forward with objective evidence to show that the increased charges could not have been brought before the defendant exercised his rights. Because the court believed that the circumstances surrounding the felony indictment gave rise to a genuine risk of retaliation, it adopted a legal presumption designed to spare courts the "unseemly task" of probing the actual motives of the prosecutor.

*United States v. Goodwin, supra,* 457 U.S. at 372, 102 S.Ct. at 2488.

The Supreme Court in turn reversed the circuit court and reinstated the judgment of the district court. In doing so, they held that from these facts, all of which arose pre-trial, there was no presumption of vindictiveness that the prosecutor need overcome. Such a presumption, the Court stated, is to be applied only in those cases where a reasonable likelihood of vindictiveness existed. Significantly, however, the Supreme Court further stated:

> In declining to apply a presumption of vindictiveness, we of course do not foreclose the possibility that a defendant in

an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do. In this case, however, the Court of Appeals stated: "On this record we readily conclude that the prosecutor did not act with actual vindictiveness in seeking a felony indictment." 637 F.2d at 252. Respondent does not challenge that finding. Absent a presumption of vindictiveness, no due process violation has been established. *United States v. Goodwin, supra,* 457 U.S. at 384, 102 S.Ct. at 2494.

The Ninth Circuit has followed this in *United States v. Gallegos-Curiel,* 681 F.2d 1164, wherein the Court stated at 1169:

In every case alleging inferred vindictive prosecution, there must be a threshold showing of vindictiveness or the likelihood of it before the court is justified in inquiring into the prosecutor's actual motives. The exercise of routine or clearly necessary defense motions in the pretrial stage does not meet the threshold for more detailed inquiry and does not suffice to raise the presumption of vindictiveness. As did the Supreme Court in *Goodwin,* we will analyze the timing and nature of defendant's act to determine whether the prosecutor likely acted for a punitive or retaliatory motive so that the presumption is warranted. The case before us contains no allegations of express threats or harassment.

█ In *Goodwin* the Supreme Court did not discuss the relationship of the two prosecutorial offices. In *Gallegos-Curiel* the defendant's case was handled at all levels by the same prosecutorial office. Here however, the evidence establishes conclusively that the independent judgment of two separate prosecutorial agencies are involved. That situation has arisen in the Ninth Circuit in *United States v. Burt,* 619 F.2d 831 (9th Cir.1980). The facts in that case are briefly as follows:

There, as here, the underlying investigations were conducted exclusively by state officers through the use of state facilities and state arrest warrants. As a result of these investigations, state criminal complaints were filed against the various defendants in both San Bernardino County and Riverside County. After the state charges had been filed, but before the exercise of any federal or state constitutional or procedural rights had been undertaken by any of the defendants, meetings occurred between the California agencies and a federal Drug Enforcement Administration agent to discuss the possibility of prosecution under the federal statutes. Some of that discussion focused upon the fact that under certain federal statutes, certain of the state defendants could receive substantially more severe penalties than possible under state law. By June 20, 1979, there was a firm agreement between the state and federal authorities that the defendants would be federally prosecuted.

No one had bothered to tell the Riverside County prosecutor about this agreement, and on July 20, 1979, the Riverside charges were dismissed against two of the defendants in the federal action. This dismissal followed an order of the Riverside County Municipal Court granting a defendant's motion to suppress evidence because the search warrant was faulty. After this occurred, the Riverside County prosecutor determined that he could not proceed in the matter, and the dismissal was entered.

On October 22, 1979, a hearing was noticed in the San Bernardino proceedings on defendants' motion to suppress evidence. At the date of hearing, the San Bernardino prosecutor moved to have the complaint against the defendants dismissed because the prosecution was unable to proceed.

On January 17, 1980, a federal grand jury returned a twelve-count indictment, including an indictment against one of the co-defendants for operating a continuing criminal enterprise. The district court declined to dismiss the action on the grounds of vindictive prosecution, and this appeal followed.

However, in considering the unanimous decision of the Ninth Circuit panel, one must continually keep in mind the judicial

caveat contained therein: "In spite of the various problems which are raised because two independent prosecutor's offices filed charges against the defendants, we choose not to address these questions in this opinion. These questions are left for another case on another day." *United States v. Burt, supra*, at 837.[3]

However, in *Burt*, the court enunciated several factors to sustain its refusal to dismiss on the grounds of vindictive prosecution.

(A) The timing of the decisions to proceed in federal court.

In *Burt* the Supreme Court relied on the fact that the decision to prosecute in federal court preceded the exercise of any procedural rights in state court.[4] Of course, the facts in the instant case are substantially contrary to those as found by the court to exist in *Burt*. In the instant case, at least one of the defendants was already pursuing his state procedural rights when the inquiry was first made by Lt. Brashears about federal procedures. Ballester's state court procedural efforts actually resulted in a second dismissal before a formal approach was made to the federal prosecutorial authorities.

(B) Could the United States Attorney's Office devote more time and resources to the case?

The record is absolutely devoid of absolutely any evidence as to whether or not a parallel condition existed with regard to the case before the Court. It is the Court's belief that the Stanislaus County District Attorney's Office has more personnel than the criminal staff of the U.S. Attorney's Office, including both Sacramento and Fresno.

(C) A federal trial would proceed more quickly than a state trial.

Because the provisions of the federal Speedy Trial Act cannot be waived by the defendant, that statement is generally correct.

(D) Federal penalties for the criminal acts are more severe.

This is true, of course, in the instant case. Indeed, it is true in regard to practically any felony that one can imagine in California.

The reasoning of the Ninth Circuit panel in this regard is interesting but logically follows the analysis in *United States v. Goodwin, supra*.

In the second trial situation, after a previous conviction, the prosecutorial or judicial function in "upping the ante" takes on a totally different aspect than if the "ante is upped" before trial.[5]

(E) The attempt to circumvent the more liberal provisions of California law.

Clearly, unlike *Burt*, there is a direct attempt to circumvent the provisions of California law, and particularly the one that would now bar any further prosecu-

---

**3.** The Ninth Circuit did have occasion to speak to this issue in *United States v. Hollywood Motor Car Co., Inc.*, 646 F.2d 384 (9th Cir.1981), however, the Supreme Court determined that the Ninth Circuit Court of Appeals did not have jurisdiction under 28 U.S.C. § 1291, to review the district court's order refusing to dismiss the preceding indictment for vindictive prosecution. In so holding, the Supreme Court determined that an appeal from the district court's decision on a motion to dismiss based on vindictive prosecution does not fall into the limited category of cases included within the collateral order exception set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

**4.** Although the federal indictment was not returned until after certain motions were filed by some of the defendants in San Bernardino County and actually successfully pursued in Riverside County, the Ninth Circuit panel implicitly holds that the effective date for purposes of their decision was June 29, 1979, when the state Bureau of Narcotics Enforcement agreed to submit the case to federal prosecution on that date.

**5.** State and federal courts have concurrent jurisdiction of bank robberies that occur at institutions insured by the Federal Deposit Insurance Corporation or similar federal agencies in this district, and at the Fresno courthouse 90% plus of all bank robberies in this service area are filed in federal district court. The logic of the severity of penalty argument would compel the federal prosecutors to defer to the more lenient state prosecutors in such cases in order to give the benefit of the potentially lesser sentence.

tion of these defendants in the California state court. Hence, this is an additional factor present in the case now before this court that was not present in *Burt*.

(F) Evidence of a retaliatory motive.

Unlike *Burt*, there is evidence of a retaliatory motive in this case. First, of course, there is the "threat" of Deputy District Attorney David Florence, warning Ballester that if he proceeded to press his second motion for dismissal the matter would be turned over to federal authorities. Of course, there is no evidence that this threat was made with either the knowledge, consent or concurrence of any federal prosecutor, or, for that matter, any federal criminal investigative agency.

Next, of course, is the undisputed testimony of Lt. Brashears that he did not seek federal prosecution until after it became apparent that Ballester would receive a second dismissal.

Contrasted with this, of course, is the undisputed declaration of the Assistant U.S. Attorney which indicates that he was not aware of this case as a potential federal prosecution until June, 1983. Later, either in the latter part of June or the first part of July, he met with Stanislaus County officers.[6]

Finally, Leighton concludes that he was not motivated by the defendants' exercise of their procedural or constitutional rights in accepting the case for prosecution, but rather he felt that justice required prosecution of persons who sold cocaine in these quantities. Of course, the very reason that the defendants could not be further prosecuted in state court was the direct and proximate result of their vigorous exercise of state procedural rights.

(G) The law in other Circuits.

In *United States v. Sellers*, 603 F.2d 53 (8th Cir.1979), the defendant had been tried in state court and found guilty of certain drug related crimes. Pursuant to plea bargain, he was allowed to plead to a reduced charge. He was then indicted in federal court for offenses arising out of the same act. The Eighth Circuit panel pointed out first that dual state and federal prosecution for offenses arising out of the same acts did not violate the double jeopardy clause. Each sovereign is entitled to prosecute the defendant for acts made criminal under its own laws, citing *Rinaldi v. United States*, 434 U.S. 22, 28, 98 S.Ct. 81, 84, 54 L.Ed.2d 207 (1977). With regard to Sellers motion for dismissal on grounds of prosecutorial vindictiveness, the Court said:

> As for Sellers' charge of prosecutorial vindictiveness, we find nothing in the record beyond defendant's bare allegations to support this contention. Sellers asserts that his prosecution in this case was motivated by the light sentence he received in state court. He ignores the fact that thirty-three other members of the same conspiracy were also indicted by the federal grand jury. Apart from his double jeopardy and *Petite* [*v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960)] policy arguments, which present no defense, Sellers has offered no plausible reason why he should have been exempt from federal prosecution. This is not a case of selective prosecution; *See United States v. Ojala*, 544 F.2d 940, 943–45 (8th Cir. 1976); nor of resentencing or reprosecution in retaliation for a defendant's exercise of a procedural, statutory or constitutional right.

*United States v. Sellers, supra*, at 57, 58.

In *United States v. DeMichael*, 692 F.2d 1059 (7th Cir.1982), it appears that the defendant had been subjected to two state prosecutions in the State of Wisconsin which had been dismissed and the orders of

---

**6.** There is a discrepancy in the Leighton declaration in that it would appear from the declaration that his meeting with the Stanislaus County officers occurred before Ballester's second dismissal. Ballester's second dismissal, according to the records of the Stanislaus County Superior Court, occurred on May 23, 1983. According to

the Leighton declaration, he did not meet with the Stanislaus County officers until late June or early July, 1983. However, it should be noted that the cases against McGiffen and Hayes were still pending in Stanislaus County at that time, and their next appearance date was scheduled for July 18, 1983.

dismissal dismissed by the Wisconsin Supreme Court. Apparently he had further been subjected to a federal prosecution in the Northern District of Illinois which case had been disposed of by a plea bargain. In disposing of this argument, the Seventh Circuit panel observed:

There is no vindictiveness as long as the prosecutor's decision is based upon the normal factors ordinarily considered in determining what course to pursue, rather than upon genuine animus against the defendant for an improper reason or in retaliation for exercise of legal or constitutional rights. For example, suppose that bank robbery is an offense against both state and federal law, and in the state courts the robber is convicted only of illegally parking the getaway car in front of the bank, and pays a small fine; is it vindictive if the federal prosecutor seeks an indictment for the federal offense of bank robbery, even though he would have stayed his hand if the defendant had received a substantial sentence in state court? The same reasoning applies if the defendant has robbed banks in several judicial districts. The United States Attorney in one district may properly take into consideration the results of prosecution in another district in determining whether to proceed with prosecution for the offenses committed within his bailiwick.

*United States v. DeMichael, supra,* at 1062.

In *United States v. Ng,* 699 F.2d 63 (2nd Cir.1982), the defendants were arrested as a result of a combined federal-state investigation and found to be illegally in possession of certain firearms. Complaints were filed in the District Court of Massachusetts. Being assured by state prosecutorial agencies that they would proceed under Massachusetts state law, and particularly under a statute that mandated the imposition of a one year jail term, the federal prosecutor deferred to the state prosecution, feeling that the government's interest would thus be adequately protected. Accordingly, the federal complaint was dismissed. Later negotiations with another state prosecutor resulted in a plea bargain, and the defendants received sentences of 60 days imprisonment and a $500 fine. The defendants were then indicted by the federal government by federal prosecutors in federal district court. The district court dismissed the indictment stating that "while there is no evidence that the federal prosecution was motivated by malice or bad faith," reinstitution of the federal prosecution after the disposition of the case by pleas of guilty to reduced charges created "an appearance of vindictive retaliation" because the expressed dissatisfaction of the federal authorities with the state plea bargain. The circuit court reversed, stating:

A setting that involves the conduct of two independent sovereigns does not lend itself to the concept of vindictive prosecution. Absent any evidence or finding so far in the present case, for instance, that the State of Massachusetts acted as a tool of the federal government in filing the state charge against the defendants or in negotiating a plea agreement with them, it cannot be said that the federal prosecutor accepted any responsibility for the conduct of the state or the defendants in the initiation or disposition of the state case. The most that appears is that from the very outset the federal prosecutor steadfastly took the position that the federal interest in deterring illegal interstate firearms trafficking would be satisfied only if each of the defendants received a mandatory one-year sentence. Although one may reasonably disagree with his judgment in the matter, the evaluation of the charges clearly rested within his prosecutorial discretion. If the state should obtain a conviction carrying a mandatory one-year sentence, as appeared to be most likely, a duplicative federal prosecution would then become both unnecessary and wasteful. Accordingly, the federal prosecutor deferred prosecution pending the outcome of the state case, consenting to dismissal of the federal complaints "without prejudice to the rights of the United

States to reinstitute proceedings," which put the defendants on notice that the federal government would not be bound by any plea agreement they might negotiate with the state. Indeed, if the state prosecution had been controlled by the federal government, there never would have been a plea agreement of the type negotiated by the state. Thus, the federal prosecutor's reinstitution of federal charges was based not on hostility or a punitive animus toward the defendants but on his consistent appraisal of the federal government's interest in the matter as requiring imposition of the one-year term which the state initially sought.

*United States v. Ng, supra,* at 68–69.

### Conclusion

The underlying principle to be derived from *United States v. Goodwin, supra,* is that a mechanical prophylactic rule should not be applied to pre-trial prosecutorial decisions that may have the potential effect of increasing the severity of the penalties for previously instituted state charges arising from the same nexus of operative facts. The wisdom of that rule is demonstrated by the facts of the instant case. Here, three defendants were arrested in the process of delivering 30 ounces of cocaine. True, their prosecution was prevented in state court by a set of occurrences to which they were not privy. However, to succeed with this motion, they would be required to show that the federal action was motivated by a desire to punish them for using state procedures to insure the benefit of their good fortune. Implicitly, they concede that this is not possible to establish such a motive on the part of the federal prosecutor. Accordingly, the defendants' motion to dismiss on the grounds of vindictive prosecution are denied.

EXHIBIT A

# DRUG ENFORCEMENT UNIT

P.O. BOX 3484        (209)571-6300        MODESTO, CALIFORNIA 95354

---

RICHARD BRESHEARS, Lieutenant
Unit Supervisor

[SEAL]        May 26, 1983

Agent Rick Horne
Drug Enforcement Administration
P.O. Box 72
Fresno, CA 93707

Re: Our File No. N82–375
Ballester, McGiffin and Hayes

---

Dear Rick:

In reference to our telephone conversation, I have enclosed the case of People vs. Ballester, McGiffin and Hayes. This case evolves around a purchase of one kilo of cocaine from the three defendants for a negotiated price of $65,000.00 by an undercover SCDEU agent. The sale was set up by an informant, Art Pickens. This case has been moving through the local courts, but we are now faced with a dismissal of the charge, due to the fact the informant, Art Pickens, has fled and we can not produce him for trial. Ballester has already had his preliminary hearing set aside and the state charges will in all probability be

dismissed. McGiffin and Hayes are set for a trial on July 18, 1983, but the District Attorney's Office has informed me that in all probability they will have to dismiss this case also, as the ruling in the Ballester case will apply to them. The Stanislaus County District Attorney's Office through the Chief Deputy District Attorney Al Girolami, is aware of this request and concurs to it. They also feel that this case should be dealt with under federal law as to the particular problem that has now developed concerning the California law relating to the necessity of having the informant present at trial.

Two of the defendants, McGiffin and Hayes, are from Florida and are purported to be from a major cocaine distribution ring centered in Florida and Georgia, with McGiffin being one of the main controlling parties. Both of these defendants have prior federal convictions that resulted in incarceration in a federal penitentiary. Ballester is a local resident who at one time resided in Florida and became involved with the other two defendants at that time.

This case is very important to us, as it is the largest purchase of cocaine that has been made in this area. As such, this case has received considerable press and public attention.

I would certainly appreciate this case being prosecuted through the federal courts by the United States Attorney, as it appears this will be the only manner in which justice will be served as it pertains to these defendants.

Do not hesitate to call if I can be of any help or further assistance. I will also make myself available to you, if you desire that I accompany you to consult with the United States Attorney.

    Very truly yours,
    /s/ Richard Breshears
    RICHARD BRESHEARS, Lieutenant
    Drug Enforcement Unit
    Stanislaus County

RB:dk

Encls.

EXHIBIT B

## DECLARATION IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS INDICTMENT

### DECLARATION.

I declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief.

1. That I am an Assistant United States Attorney for the Eastern District of California, and have been so employed for the past three years and eight months; that I work exclusively in the criminal area of the United States Attorneys Office in Fresno; that in June, 1983, I was contacted by Special Agent Richard Horn of the Drug Enforcement Administration in Fresno regarding a cocaine case which was developed by the Stanislaus County Drug Enforcement Unit in Modesto which involved the above-named three defendants; that Special Agent Richard Horn asked me if I would be interested in speaking to the agents from Modesto because they had a problem with the prosecution of the case as a result of the informant leaving the jurisdiction and the fact that the case in Modesto would probably be dismissed because of the informant's failure to appear at the preliminary hearings; Special Agent Richard Horn provided me the attached letter by Lieutenant Richard Brashears of the Stanislaus County Drug Enforcement Unit; that in the latter part of June, 1983 or the first part of July, 1983, Lieutenant Brashears, and the undercover agent, Marvin Harper, as well as two other officers with the Stanislaus County Drug Enforcement Unit appeared in my office and apprised me as to the underlying facts of the case and the problems developed in Stanislaus County as a result of the informant not appearing for the preliminary hearing; that I was advised at that time by Lieutenant Brash-

ears and Marvin Harper as to the background of the informant and the informant's role in this particular case; that I advised Detective Harper and Lieutenant Brashears to make efforts to locate the informant and that they apprised me they would—but they also advised that it was extremely doubtful that they would locate the informant by the next appearance date in Stanislaus County and that the case would then be dismissed;

2. That I advised Lieutenant Brashears and Detective Harper that I would prosecute the case in the Federal Court in Fresno provided they continue to make efforts to locate the informant;

3. That on or about July 7, 1983, the Indictment was filed in the instant case and that Detective Harper is still attempting to locate the informant; that the United States Attorneys Office has sent a subpoena to a detective in Hawaii in an attempt to execute service of the subpoena on the informant;

4. That I, Brian C. Leighton, did not indict this case as a result of the defendants exercise of any constitutional right to have the informant present for trial; but indicted this case since the case in Modesto would be dismissed, could not have been filed again, and justice dictated that the three individuals responsible for the delivery of over thirty ounces of cocaine, delivered from Florida, should not go unpunished; that the prosecution in this case is not occurring based on the defendants' motion to compel the informant to appear for the preliminary hearing, but based on the fact that the informant has fled the jurisdiction, which mandated a dismissal in Stanislaus County.

/s/ Brian C. Leighton
BRIAN C. LEIGHTON
Assistant U.S. Attorney

Subscribed and sworn to before me on:

September 2, 1983

DEPUTY CLERK, U. S. DISTRICT COURT