UNITED STATES of America,
Plaintiff-Appellant,

v.

Kenneth Moses LOUD HAWK, Russ James Redner, Dennis James Banks, and Darlene Pearl Nichols, aka Ka-Mook Banks, Defendants-Appellees.

No. 83–3067.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 4, 1984.

Decided Aug. 30, 1984.

Kenneth S. Stern, Milwaukie, Or., for defendants-appellees.

Charles Turner, Asst. U.S. Atty., Portland, Or., for plaintiff-appellant.

Before WALLACE and CANBY, Circuit Judges, and CRAIG, District Judge *.

* The Honorable Walter Early Craig, Senior United States District Judge for the District of Arizona, sitting by designation.

CANBY, Circuit Judge:

This is the third interlocutory appeal arising from the government's efforts to prosecute these defendants. Although it has been more than eight years since defendants were originally arrested and indicted, they still have not been brought to trial so that their guilt or innocence may be determined. We are now asked to decide whether the delay in bringing defendants to trial has violated their constitutional right to a speedy trial.

## I.

The facts giving rise to the present charges and the first two appeals in this case are adequately set forth in our two previous opinions. *See United States v. Banks*, 682 F.2d 841, 842–44 (9th Cir.1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 755, 74 L.Ed.2d 972 (1983); *United States v. Loud Hawk*, 628 F.2d 1139, 1141–43 (9th Cir.1979) (en banc), *cert. denied*, 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980). We merely summarize them here.

Defendants were arrested on November 14, 1975, after being stopped by the Oregon State Police on the basis of information supplied by the FBI. A search of defendants' vehicles pursuant to a valid search warrant uncovered several firearms, a quantity of what the police believed to be dynamite, and apparatus for the manufacture of time bombs. Rather than preserving the dynamite or transferring it to a place of safekeeping, the state authorities decided to destroy it without notification to defendants.

On December 22, 1975, a federal grand jury returned a five-count superseding indictment. The first three counts related to defendants' alleged possession of dynamite (the dynamite counts), and the fourth and fifth charged defendants with unlawful possession of firearms (the nondynamite counts). Prior to trial, defendants successfully moved for suppression of any evidence relating to the destroyed dynamite. The government sought immediate review of the suppression order under 18 U.S.C. § 3731. The district court, however, denied the government's request for a continuance to permit it to pursue its appeal of the suppression order, and ordered that trial proceed as scheduled on May 12, 1976. When the day for trial arrived, the government announced it was not ready. Because of the unwillingness of the government to proceed to trial, the district court, acting pursuant to Fed.R.Crim.P. 48(b), dismissed the indictment with prejudice for unnecessary delay. The government filed its notice of appeal in open court on the same day.

We consolidated the two appeals, and a panel of this court initially affirmed the dismissal. However, at the instance of the government, we voted to take the appeal en banc and reversed the suppression order. In analyzing the propriety of the district court's order dismissing the indictment, we examined the dynamite counts and the nondynamite counts separately. As to the former, we held that the delay necessitated by the government's appeal of the suppression order had not been "unnecessary" for purposes of Rule 48(b). *United States v. Loud Hawk*, 628 F.2d at 1149–50. Rather, we reasoned that the delay was necessary to the meaningful exercise of the government's statutory right to appeal the suppression order. As to the nondynamite counts, however, we held that the delay had been "unnecessary" because the suppression of evidence relating to dynamite had nothing to do with the nondynamite charges, which could have proceeded to trial. *Id.* at 1150. Nevertheless, we decided that dismissal of the nondynamite counts *with prejudice* was inappropriate because the government had not been forewarned that dismissal with prejudice would result from a failure to proceed with the prosecution. *Id.* at 1151. Accordingly, we ordered denial of defendants' motion to suppress, reinstatement of the dynamite counts, and reconsideration of the dismissal of the nondynamite counts insofar as the dismissal was with prejudice. Following denial of certiorari, our mandate issued on March 12, 1980, three years and ten months after the indictment had been dis-

missed by the district court and appeal taken therefrom by the government.

On remand, the district court, at the urging of defendants, ruled that the nondynamite counts could not simply be reinstated. Consequently, the government was compelled to go back before the grand jury and seek a second superseding indictment. The indictment which resulted was returned on June 18, 1980. It again charged defendants with four of the five original counts in the first superseding indictment and in addition charged defendants with three new counts. The addition of these new counts precipitated a defense motion to dismiss the indictment for vindictive prosecution. On August 8, 1980, the district court granted the motion as to KaMook Banks and dismissed all counts in the indictment pertaining to her. The motion as to the other defendants, however, was denied. The government appealed the dismissal as to KaMook Banks, and the other defendants appealed the denial of the motion as to them. We reversed the dismissal as to KaMook Banks, except that we upheld the dismissal of the added count; we ordered all but the added count reinstated. *United States v. Banks*, 682 F.2d at 846. As to the other defendants, we dismissed the appeal for lack of jurisdiction. *Id.* at 844. We denied defendant's request for rehearing, and the Supreme Court refused certiorari. Our mandate issued on January 31, 1983, two years, five months after appeal was taken from the district court's order and seven years, two months, and seventeen days after defendants were arrested.

Trial was rescheduled to being on April 11, 1983. The government, however, successfully obtained a continuance, over the objection of defendants, until May 3, 1983. Subsequently, the court on its own motion continued the trial date until May 23, 1983. The trial was then rescheduled for June 13, 1983, for reasons not known to this court. Defendants objected to each of these continuances.

On March 21, 1983, the defendants moved for dismissal on the ground that the delay in bringing them to trial violated their right to a speedy trial guaranteed by the sixth amendment. By order of May 20, 1983, the district court granted defendants' motion and dismissed the indictment with prejudice. It concluded that the appropriate period within which to assess whether defendants had been denied their speedy trial right was the entire ninety-one month period between November 14, 1975 when defendants were arrested and June 13, 1983 when trial was finally set to begin. It reasoned that the entire period of delay should be analyzed under the speedy trial clause of the sixth amendment, rather than under the due process clause of the fifth amendment, because at all times during this period defendants were "accused" persons. Finding that the majority of the delay in this case was attributable to the two interlocutory appeals, the district court concluded that the seventy-five months consumed by the two appeals must be weighed against the government. Moreover, it found that defendants had adequately asserted their right to a speedy trial, and that they had been prejudiced by having to live with unresolved criminal charges for more than seven and one-half years and by impairment of their ability to defend themselves.

## II.

■ Although the right to a speedy trial asserted by defendants is "one of the most basic rights preserved by our Constitution," *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1 (1967), no per se test has been devised to determine when the right has been violated. Instead, we must apply a rather flexible "functional approach" that attempts to give proper weight to the various interests at stake. *Barker v. Wingo*, 407 U.S. 514, 522, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972). The primary factors to be considered are the length of the delay, the reasons for the delay, the degree to which defendants asserted their right to a speedy trial, and the extent of prejudice to the

defendants caused by the delay. *Id.* at 530–33, 92 S.Ct. at 2191–93.

### A. Length of Delay

■ In order to determine the length of delay for sixth amendment purposes, we must know when to begin counting and when, if ever, to interrupt counting. It is clear enough that the speedy trial clause does not apply "before a defendant is indicted, arrested, or otherwise officially accused." *United States v. MacDonald*, 456 U.S. 1, 6, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). We begin our count, therefore, with defendants' arrest on November 14, 1975. The question then is whether, and for what purposes, we must interrupt it.

The government first contends that we must exclude the periods during the interlocutory appeals when the indictments had been dismissed and not yet reinstated. During the first interlocutory appeal, the indictment was dismissed as to all defendants on May 12, 1976, and a superseding indictment was not returned until June 18, 1980. During the second interlocutory appeal, the superseding indictment was dismissed as to KaMook Banks on August 8, 1980, and was not reinstated as to her until our mandate issued on January 31, 1983.[1] The government contends that these periods must be excluded on the authority of *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).

■ In *MacDonald*, the Supreme Court held that the sixth amendment speedy trial clause did not apply to delay during the period after charges were formally dropped by the government and before renewed charges were brought. It based this holding on the purposes of the sixth amendment, in contrast to those of the due process clause of the fifth amendment:

> The Sixth Amendment right to a speedy trial is .... not primarily intended to prevent prejudice to the defense caused by the passage of time; that in-

terest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*Id.* at 8, 102 S.Ct. at 1502. Because the formal dropping of charges by the government removes the disabilities with which the sixth amendment is concerned, it is no longer appropriate to apply that amendment. *Id.* at 8–9, 102 S.Ct. at 1502. Delay while no charges are pending is similar to delay prior to indictment, and is to be measured by the due process standard applicable to pre-indictment delay. *Id.* Due process is not violated unless the delay has caused actual prejudice to the conduct of the defense. *United States v. Marion*, 404 U.S. 307, 325–26, 92 S.Ct. 455, 465–66, 30 L.Ed.2d 468 (1971). No such prejudice need be demonstrated as an essential prerequisite of a sixth amendment claim. *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973) (per curiam).

■ We accept, of course, these controlling principles, but we do not find them applicable here because our case is different from *MacDonald*. When the government voluntarily dismisses pending charges, "a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation." *MacDonald*, 456 U.S. at 9, 102 S.Ct. at 1502 (quoting *Marion*, 404 U.S. at 321, 92 S.Ct. at 464). The situation is quite the contrary in the present case, where the indictments were dismissed over the government's opposition and the government vigorously and successfully sought to have them reinstated on appeal. While those appeals were pending, the defendants were subject to precise-

---

**1.** The *MacDonald* rationale cannot be applied as far as the second appeal concerns the other defendants because the second superseding in-

dictment remained pending as to them during the time spent on their appeal.

ly the burdens that the sixth amendment was designed to protect against.

It is true that defendants were not incarcerated or subjected to other restrictions on their liberty during the time when the indictments had been dismissed. They were, however, subject to the imposition of such restraints at any time. Their freedom was far more precarious than that of a person merely subject to investigation but not indicted.

■ Most important, however, is the fact that defendants' interest in minimizing "the disruption of life caused by arrest and the presence of unresolved criminal charges," *id.* at 8, 102 S.Ct. at 1502, continued unabated during the interlocutory appeals. A formal accusation, as by arrest, "may seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obliquy, and create anxiety in him, his family and his friends." *United States v. Marion,* 404 U.S. at 320, 92 S.Ct. at 463. The public accusation in this case clearly maintained its force while the government prosecuted the appeals in order to reinstate the charges against the defendants. The appeals unequivocally stated the government's intention to continue the prosecution and asserted its legal grounds for doing so. Because the government's appeals after dismissal of the indictment bore the indicia and imposed the disabilities of continued, formal public accusation, we cannot escape the conclusion that the defendants remained "accused" during the periods when the government was appealing the dismissals of their indictment.[2]

The government next contends that, in any event, the period consumed by the government's own interlocutory appeals should be excluded, because otherwise the government's "absolute right" to appeal

would be impaired. The government grounds this right in 18 U.S.C. § 3731, which authorizes appeals by the government from district court orders dismissing indictments or granting motions to suppress evidence.

■ Certainly the government is entitled to protection of its statutory right of appeal. *See United States v. Booth,* 669 F.2d 1231, 1241 (9th Cir.1981). In our view, however, it accords too little respect to the right of speedy trial secured by the sixth amendment to exclude entirely from consideration the time spent on the government's interlocutory appeals. If such appeals are not even counted in the period of delay, then "speedy" trials could be postponed for years or decades, no matter how onerous the burdens borne by the defendants in the meantime, and the sixth amendment would not even be implicated. We reject such a per se approach to the problem of delay caused by interlocutory appeals.

■ It is true that two courts of appeals seem to have adopted the government's position. *United States v. Jackson,* 508 F.2d 1001, 1004–05 (7th Cir.1975); *United States v. Bishton,* 463 F.2d 887, 890 (D.C.Cir.1972). Those cases did, however, admit of an exception when the government's appeal was taken in bad faith, by neglect, or for purposes of delay. *Id.; see United States v. Saintil,* 705 F.2d 415, 418–19 (11th Cir.1983). The periods of delay involved were also much shorter than those present here. Even so, it seems analytically more sound to count the time taken by the government's appeal within the period of delay, and then to assess the justifications for that appeal under the second step of the *Barker v. Wingo* analysis: that dealing with "reasons for the delay." The importance of protecting the government's statutory right of appeal in a given case can be weighed and ultimately placed

---

**2.** *United States v. Ciammitti,* 720 F.2d 927 (6th Cir.1983), on which the government relies, is not contrary to our holding. There the government did not appeal the court-ordered dismissal. During the period after dismissal and prior to indictment, no charges were pending against

defendants and no appeal was being prosecuted. Defendants were therefore not subject to the imposition of any restraints on their freedom and were not the subject of any public accusation of guilt.

in the balance against the damage to defendants' sixth amendment interest. This latter, more flexible methodology appears to have been the one selected by the Fifth Circuit in *United States v. Herman,* 576 F.2d 1139, 1146 (5th Cir.1978), and we prefer it.[3]

■ We therefore calculate the delay in this case as ninety months, the period from the arrest of defendants until their indictment was last dismissed on May 20, 1983,[4] some three weeks before their trial was scheduled to begin. Ninety months is by any account an extreme delay and by its very immensity must weigh heavily in the ultimate balance. Since this ninety-month delay is without question "presumptively prejudicial," we proceed to the remaining three steps of the *Barker v. Wingo* analysis.

## B. Reasons for the Delay

Seventy-five months of the delay in this case can be attributed to the two interlocutory appeals. The first appeal taken by the government consumed forty-six months; the second, in which both sides appealed, consumed twenty-nine months. Our task is to examine the reasons for these delays and to determine the degree to which they weigh against or in favor of the government. *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192.

■ In assessing the delay attending the first appeal, we address the dynamite counts and the nondynamite counts separately. With respect to the nondynamite counts, the delay for the interlocutory appeal was wholly unnecessary, as we pointed out in *United States v. Loud Hawk,* 628 F.2d at 1150. The government appealed to overturn the order of the district court

suppressing evidence relating to the dynamite; there was no reason why the government could not have gone forward with prosecution of the nondynamite charges. While a single trial doubtless would have been more convenient for the government, that convenience must be judged a slight reason for incurring the substantial delay of forty-six months. The postponement of trial of the nondynamite charges during the first appeal consequently weighs heavily against the government.

■ The government's reasons for appealing the suppression order relating to the dynamite charges are substantial, in light of "the necessity of the appealed question to the government's case, the strength of the government's position on that issue, and the seriousness of the crime." *United States v. Herman,* 576 F.2d at 1146. The suppressed evidence was crucial to the government's case on the dynamite charges. The strength of the government's position was demonstrated by its success in the appeal. The crimes charged were serious. The government's action in taking the appeal was therefore clearly justified, and would of itself support a reasonable delay. The problem is that this appeal took forty-six months.

■ While some of this appellate delay can be attributed to defendant's unsuccessful petition for certiorari,[5] most of the delay must be attributed to the processes of this court. Even in light of the heavy docket and limited membership of this court at that time, and of the fact that the difficult issues presented were ultimately taken en banc, the appeal took an extraordinarily long period of time. The government, of course, could do nothing about that problem. It is therefore a "neutral"

---

3. This court seems to have applied the same approach as the Fifth Circuit, without extended discussion, in *United States v. Cox,* 475 F.2d 837, 841 (9th Cir.1973); *see United States v. Osuna-Sanchez,* 446 F.2d 566, 567 (9th Cir.1971), *cert. denied,* 404 U.S. 1022, 92 S.Ct. 698, 30 L.Ed.2d 672 (1972).

4. We select May 20, 1983, as the ending date because it is the date of the order of the district

court that is the subject of this appeal. We must review that order to determine whether it was correct when made.

5. Defendants' petitions for rehearing and certiorari consumed only six months. The delay attributable to this factor is insignificant in the context of a total delay of forty-six months.

reason for delay, similar to congestion in the trial court. *See Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192. Such neutral reasons, however, are to be weighed against the government, although not as heavily as some others, "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* In other words, courts can deprive defendants of the right of speedy trial just as prosecutors can. The forty-six month delay attending the government's appeal of the suppression order consequently weighs against the government.

 The second interlocutory appeal took twenty-nine months. Three of the defendants appealed the district court's order denying their motion to dismiss for vindictive prosecution. The government appealed the dismissal of the indictment as to KaMook Banks. Again, the government's appeal was justified and it succeeded in obtaining the relief it sought.

 Three of the defendants were themselves appellants in the second interlocutory appeal. Authority provides little guidance for evaluation of delay caused by defendants' appeals, but the same elements appear to be relevant. In applying them, however, care must be taken to guard against defendants' manufacturing delay for purposes of a later speedy trial claim. Appeals taken in bad faith or for purposes of delay must weigh against defendants in the sixth amendment balance, as should appeals taken with little merit or hope of success. The interlocutory appeals taken by defendants here have not been shown to have been taken in bad faith or for delay. They were dismissed ultimately as improper interlocutory appeals, but that result was dictated by the intervening decision of *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982). At the time the appeals were taken, the law of this circuit permitted appeals from an order denying dismissal on grounds of vindictive prosecution. *United States v. Burt,* 619 F.2d 831 (9th Cir.1980). While defendants were not

compelled to appeal prior to trial under the circuit law, they had a right to do so, and that right is entitled to protection. The issue being appealed was certainly important to their defense. Their appeal was justifiable, and we conclude that the delay attending it in this court should therefore not be weighed against defendants.

 We also conclude, however, that the time taken for normal handling of the appeal that defendants elect to pursue before trial ought not to weigh against the government either. If the court's own processes unduly delay the appeal, that "neutral" reason must weigh lightly against the government. There was no such undue delay here in the twenty-three months from notice of appeal to decision by this court. To that point, therefore, the reasons for the delay caused by defendants' interlocutory appeal weigh for or against neither side.

 The additional delay of six months that occurred as a result of the defendants seeking certiorari from the judgment of this court dismissing the appeal cannot be viewed as neutral. In light of the recent decision of *Hollywood Motor Car Co.* by the Supreme Court, and in light of this court's total reliance on it, the chances of defendants' obtaining review by certiorari were virtually nil. That portion of the delay must be wholly excused.

### C. Assertion of Speedy Trial Right

 The district court found that the defendants objected to the delay as early as May 12, 1976, when the government announced that it was not ready to proceed to trial. After each remand from this court, defendants moved the district court to dismiss the indictment on the grounds of unnecessary delay and violation of their speedy trial right. Finally, defendants objected to every continuance of their trial date after the last remand. These assertions of defendants are "entitled to strong evidentiary weight" in determining whether their rights to a speedy trial have been denied. *Barker v. Wingo,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93.

### D. Prejudice to Defendants

█ The kind of prejudice that the speedy trial clause is primarily intended to prevent is personal prejudice: "lengthy incarceration prior to trial, . . . the lesser, but nevertheless substantial impairment of liberty imposed on an accused while released on bail, and . . . the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S. at 8, 102 S.Ct. at 1502. The defendants here were incarcerated only for short periods, and were released without restriction during almost all of the period of delay. They have had to live for seven and one-half years with the anxiety of unresolved criminal charges, and the social disruption that accompanies that condition. They have therefore suffered some personal prejudice.

The district court also found that defendants had suffered prejudice to the conduct of their defense because of the inordinate delay. While prejudice to the defense is not the primary concern of the speedy trial clause, it is not irrelevant. *See Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193.[6] The district court based its finding of prejudice on the fact that witnesses had died and at least two others no longer recalled the events in issue. The government contends that there is no showing that these witnesses would have been favorable to the defense, and also argues that defendants made no attempt to depose the witnesses.

█ The showing of prejudice to the defense is somewhat speculative, partly because of the inherent difficulty of predicting the effect of the death or loss of memory of witnesses on a trial not yet held. *See United States v. MacDonald*, 435 U.S. 850, 858–59, 98 S.Ct. 1547, 1551–52, 56 L.Ed.2d 18 (1978). We therefore place little weight on this factor in the *Barker v. Wingo* balance. We do not, however, discount entirely the impairment of a fair trial that may well result from the absence or loss of memory of witnesses in this case. *See Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193; *United States v. Macino*, 486 F.2d 750, 754 (7th Cir.1973). We also note, once again that prejudice to the defense is not an essential element of a sixth amendment speedy trial claim. *Moore v. Arizona*, 414 U.S. at 26, 94 S.Ct. at 189.

### III.

█ Balancing the four *Barker v. Wingo* factors to determine whether there has been a violation of the sixth amendment is far from an exact science. None of the factors is "either a necessary or sufficient condition to the finding of a deprivation of the right." *Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193. After weighing all four factors, however, we conclude that defendants' speedy trial right has been violated.

The most weighty factor by far is the length of delay. We are confronted with a seven and one-half year delay (which incidentally would become closer to nine years if we remanded for trial). The Supreme Court in *Barker v. Wingo* described the five year delay there as "extraordinary" and found the case to be "close" even though there was a minimal showing of prejudice and the defendant did not want a speedy trial. The far longer delay here is more than enough to tip the balance in the circumstances of this case.

> It is manifest that prejudice, always a difficult thing to ascertain, must, at some point, be presumed to result from an inordinate delay in bringing a defendant to trial. Exactly where that point lies on the spectrum of pretrial delay is uncertain, but it is clear that the longer the

---

6. We do not regard *United States v. MacDonald*, 456 U.S. at 8, 102 S.Ct. at 1502, to have overruled *sub silentio* that part of *Barker v. Wingo* that renders prejudice to the conduct of the defense a relevant consideration. *MacDonald* emphasized that the sixth amendment is not "*primarily* intended to prevent prejudice to the defense caused by passage of time." *MacDonald*, 456 U.S. at 8, 102 S.Ct. at 1502 (emphasis added). *MacDonald* neither held nor, we think, intended that prejudice to the defense could never be a factor in sixth amendment speedy trial analysis. *See id.* at 23, 102 S.Ct. at 1509 (Marshall, J., dissenting).

delay, the heavier the weight to be given it in the balance.

*United States v. Macino,* 486 F.2d 750, 752 (7th Cir.1973); *see United States v. Holt,* 448 F.2d 1108, 1109 (D.C.Cir.), *cert. denied,* 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 256 (1971).

The other three *Barker v. Wingo* factors also contribute, on balance, to our conclusion that defendants' speedy trial rights have been violated in this case. The reasons for a large part of the delay weigh against the government, even though to a substantial degree it was court delay. The defendants asserted their rights to a speedy trial. Finally, personal prejudice, while minimal in comparison with that resulting from lengthy incarceration, was nevertheless present. Prejudice to the conduct of the defense is also likely, but the balance tips sharply in defendants' favor without it.

The district court was correct in concluding that trial would violate the sixth amendment rights of the defendants. Its order dismissing the indictment with prejudice is AFFIRMED.

WALLACE, Circuit Judge, dissenting:

I dissent. The majority has misconstrued *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) (*MacDonald*), which applies in this case to exclude from the sixth amendment measurement of speedy trial the periods between live indictments against the defendants.

I

The majority observes that the speedy trial clause did not apply in *MacDonald* between the government's good faith voluntary dismissal of military charges and a subsequent civil indictment. This does not mean, as the majority holds, that *MacDonald* fails to apply to involuntary dismissals or dismissals from which the government appeals. The Supreme Court, in a general statement of its holding, said: "Any undue delay after charges are dismissed, like any delay before charges are

filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." *Id.* at 7, 102 S.Ct. at 1501. Nowhere in the remainder of its opinion is there any hint that the Court meant only voluntary dismissals. *See id.* at 7–11, 102 S.Ct. at 1501–1503. On the contrary, in a footnote it commented "[o]ur holding agrees with ... the Speedy Trial Act of 1974, ... that if charges are initially dismissed and later reinstated, the period between the dismissal and the reinstatement is not to be included in computing the time within which a trial must commence. 18 U.S.C. §§ 3161(d), 3161(h)(6)." 456 U.S. at 7 n. 7, 102 S.Ct. at 1501 n. 7. Section 3161(h)(6) applies only to voluntary dismissals by the government. Section 3161(d), however, applies to dismissals on the motion of a defendant, "any charge contained in a complaint filed against an individual ... dismissed or otherwise dropped," and dismissals "by a trial court and reinstated following an appeal." For the *MacDonald* holding to agree, as it says it does, with section 3161(d), the theory of its holding must include dismissals other than voluntary dismissals by the government.

Later in the same footnote, the Supreme Court cited with apparent approval a number of Speedy Trial Act cases that excluded the period after dismissal of initial charges in counting time. *See* 456 U.S. at 7–8 n. 7, 102 S.Ct. at 1501–1502 n. 7. Among them was *United States v. Bishton,* 463 F.2d 887 (D.C.Cir.1972), where the government charged the defendant in the District of Columbia Court of General Sessions, appealed and lost after dismissal of the charges, and then brought the same charges in federal district court. *See id.* at 889, 891. This citation reinforces the clear meaning of *MacDonald:* delay after a dismissal of charges does not normally count for sixth amendment speedy trial purposes.

Applying the *MacDonald* rule to this case, the period from November 14, 1975 to May 12, 1976 counts for sixth amendment purposes for all defendants. A live indictment stood against them during that six-month period from arrest to dismissal of

the indictment with prejudice. The period from March 12, 1980 (for the dynamite matters) and June 18, 1980 (for the nondynamite matters) to May 30, 1983 counts for sixth amendment purposes for all defendants except KaMook Banks. Live indictments stood against those defendants during that roughly three-year period from our reinstatement of the dynamite counts and the superseding indictment's reinstatement of the nondynamite counts until dismissal of the indictment with prejudice again. The time between 1976 and 1980 when no live indictment stood against the defendants after the first dismissal with prejudice does not count for sixth amendment purposes under the *MacDonald* rule. The time between August 30, 1980 and January 31, 1983 when no live indictments stood against Kamook Banks does not count as to her for sixth amendment purposes under *MacDonald*. Thus, the speedy trial clause time for most of the defendants totaled approximately three and a half years. The speedy trial clause time for Kamook Banks totaled slightly more than one year.

According to *MacDonald*, the sixth amendment guarantee of a speedy trial "is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." 456 U.S. at 8. These concerns did not apply to the defendants during the times after dismissals when no live indictments were outstanding against them. They were not incarcerated then. They were not hobbled by bail then. They were not under arrest then. Had the district court imposed bail pending the appeals, *see* 18 U.S.C. § 3731, that restriction might have triggered the running of time for purposes of the speedy trial clause, but the defendants did not have to post bail. These facts indicate that excluding the times after dismissal when no live indictments stood against the defendants in this case comports both with the letter of the

*MacDonald* rule and the purposes of the sixth amendment.

The majority argues that because the defendants "were ... subject to the imposition of such restraints at any time" during the appeals of the dismissed indictments, the sixth amendment applies to those periods. That contention is inconsistent with *MacDonald* where the Supreme Court distinguished *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) (*Klopfer*), on grounds that the prosecutor in that case could activate the charges and restore the case for trial " 'without further order' of the court." *MacDonald,* 456 U.S. at 8–9 n. 8, 102 S.Ct. at 1502 n. 8, *quoting Klopfer,* 386 U.S. at 214, 87 S.Ct. at 989. Contrary to *Klopfer,* imposition of restraints pending appeal on the defendants in this case would require " 'further order' of the court." They were in essentially no worse position than before their first arrest when the government had discovered probable cause but not yet successfully acted on it.

The Constitution provides "the accused shall enjoy the right to a speedy ... trial." U.S. Const. amend. VI. The Supreme Court recently stated in *United States v. Gouveia,* — U.S. —, —, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (citations omitted) (*Gouveia*), that this right "may attach before an indictment and as early as the time of 'arrest and holding to answer a criminal charge.' " But even *Gouveia* does not assist the defendants because the most public investigation, promise to prosecute, or government statement of criminal conduct does not reach the required threshold; the government had not imposed its formal power directly on any alleged wrongdoer. As *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971) (emphasis added) (*Marion*), holds: "it is either a *formal* indictment or information or else the *actual* restraints imposed by arrest and holding to answer a criminal charge that engaged the particular protections of the speedy trial provision ...." *Accord, e.g., United States v. Mills,* 641 F.2d 785, 787 (9th Cir.), *cert. denied,* 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221

(1981). The government's public intent to prosecute and its efforts on appeal to obtain the legal authority to do so did not constitute an exercise of *formal* power directly on the alleged wrongdoers. Because the government did not seek bail, no *actual* restraints were imposed. By misreading *MacDonald*, the majority has incorrectly extended the sixth amendment beyond these limits imposed by the Supreme Court.

## II

Even after properly excluding part of the delay in this case under the *MacDonald* rule, a clear sixth amendment question remains. Three and a half years, the relevant period for most of the defendants, is a suspect delay. *See Moore v. Arizona*, 414 U.S. 25, 27, 94 S.Ct. 188, 190, 38 L.Ed.2d 183 (1973). One year, the relevant period for Kamook Banks, is less suspect but I will assume for purposes of this appeal that it is also adequate to trigger the balancing test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (*Barker*). *See id.* at 530–31 & n. 31, 92 S.Ct. at 2191–92 & n. 31.

In *Barker*, the Supreme Court identified four major factors for resolving a constitutional speedy trial claim: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192. Since *Barker*, the Supreme Court has reduced the last of these factors—prejudice—to, at best, minimal importance. *See MacDonald*, 456 U.S. at 8, 102 S.Ct. at 1502. As foreshadowed as long ago as *Marion*, *see* 404 U.S. at 324, 92 S.Ct. at 465, "prejudice to the defense caused by passage of time ... is protected primarily by the Due Process Clause and by statutes of limitations," *MacDonald*, 456 U.S. at 8, 102 S.Ct. at 1502. *See also, e.g., United States v. Lovasco*, 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752 (1977); Fed.R.Crim.P. 48(b).

The defendants in this case adequately asserted their rights to a speedy trial. As a result, the length of delay and reasons for delay amount to the most important factors for speedy trial analysis. Of the three and a half year period applicable to most of the defendants, almost two years involved their own appeal from the district court's denial of their motion to dismiss for vindictive prosecution. As the majority must concede, this period should not weigh against the government. The majority must also concede that the six months wasted by the defendants seeking rehearing en banc and certiorari in the face of new, directly controlling Supreme Court precedent, *e.g., United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982), at least cannot weigh against the government. Such essentially frivolous petitions, *see generally, e.g.,* Baker, *A Practical Guide to Certiorari*, 33 Cath.U.L.Rev. 611, 616–21, 622–23 (1984), should weigh against the defendants. But even considering that six month period as neutral, only one year remains that might possibly weigh against the government. Of that period, forty-one days are attributable to a trial date continuance ordered by the district court on its own motion. Given the complexity of this case, the time necessary to prepare all trial matters and the additional time necessary to prepare for trial again after interlocutory appeal, I cannot say that, on balance, this one year of delay violated the defendants' sixth amendment rights to a speedy trial.

Kamook Banks's case is less close. Of the slightly more than one year relevant to sixth amendment analysis, she wasted a good portion seeking certiorari along with the other defendants. I cannot say the remaining period violated her sixth amendment right to a speedy trial.

## III

Because the district court failed to apply the *MacDonald* rule to exclude for sixth amendment purposes the periods between live indictments against the defendants, we should at least remand for reconsideration. The district court abused its discretion, *see United States v. Mills*, 641 F.2d at 787; *United States v. Simmons*, 536 F.2d 827,

832 (9th Cir.), *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976), by dismissing the last indictment on speedy trial grounds based on such an erroneous calculation of delay. Because I find the record sufficient to conclude that the remaining delays are largely excusable under the balancing test of *Barker*, I would prefer not to delay the resolution of this case further but to reverse and remand for trial.