**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Louella G. SOLOMON,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Elias WESLEY,**
**Defendant-Appellant.**

**Nos. 84–3069, 84–3070.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 16, 1985.

Decided Feb. 22, 1985.

Robert S. Linnell, Asst. U.S. Atty., Yakima, Wash., for plaintiff-appellee.

Kenneth W. Raber, Kirschenmann, Devine, Fortier & Raber, J. Adam Moore, Dobbs, Moore & Kirkevold, Yakima, Wash., for defendant-appellant.

Before WRIGHT and TANG, Circuit Judges, and CROCKER *, Senior District Judge.

EUGENE A. WRIGHT, Circuit Judge:

The defendants appeal their convictions arising from the robbery and murder by

* Of the Eastern District of California.

arson of a woman on the Yakima Indian Reservation. We have reviewed the evidentiary rulings and constitutional arguments raised on appeal and we affirm the convictions.

## FACTS

While drinking at a tavern on the night of July 25, 1983, defendants Louella Solomon and her brother, John Wesley, met Katherine Piel Heath and offered her a ride. At 2:00 on the morning of the 26th, the three joined Peter George, defendants' 17-year-old nephew, who was waiting in a car. Solomon eventually drove them all to a residence on Progressive Road. All the actors were Yakima Indians and the house was on Indian National Tribal trust land on the Yakima Indian Reservation.

The three surviving participants gave conflicting testimony as to the events preceding the fire. Wesley and George each changed his account of the events during the course of investigation and trial. The following account of that night's events is presented in the light most favorable to the government.

Solomon suggested that Wesley and George obtain Heath's purse. Inside the house Wesley either struck Heath or held her while George struck her, knocking her unconscious. Her purse was taken outside to Solomon who took money from it (at least $2.00). At Solomon's suggestion, the purse was burned in a wood stove inside the house.

At some point Solomon stated that Heath had to be killed. Wesley and George returned inside and one of them started a fire in some curtains. Solomon had agreed to the burning of the house. The defendants and George left the house and drove away, leaving Heath inside.

The fire was discovered at 4:00 a.m. and allowed to burn itself out. Heath's remains were found later during a check of the scene by a firefighter. An autopsy identified carbon monoxide poisoning as the probable cause of death.

Wesley was arrested and detained by Tribal authorities on July 28th. He was federally indicted on October 24th and remained in custody until trial. George was granted complete immunity by federal and state authorities in return for his cooperation.

On December 22, 1983, at Wesley's request, a psychiatrist administered sodium amytal and interviewed him under its influence. On January 20, 1984, at the government's request, George was interviewed while under the influence of sodium amytal. A new indictment was returned, charging Solomon also.

A jury trial resulted in Solomon's conviction for first degree murder and robbery and Wesley's conviction for first degree murder and arson endangering life. Both were sentenced on the murder count to life imprisonment with the possibility of parole and each received a concurrent sentence on the other charge.

## ANALYSIS

### I. *Evidentiary Challenges*

■ The district court's evidentiary rulings will be upheld on appeal unless the court abused its discretion, *United States v. Merrill,* 746 F.2d 458, 465 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985), or committed "manifest error." *United States v. Marabelles,* 724 F.2d 1374, 1381 (9th Cir.1984).

Dr. Frederick Montgomery, a psychiatrist, conducted the separate interviews of Wesley and the witness George while they were under the influence of sodium amytal, administered intravenously. Such interviews are referred to as "narcoanalysis." *See McCormick on Evidence,* 632 (3d ed. 1984). Both interviews were attended by an Assistant United States Attorney and Wesley's attorney. George's attorney also witnessed his interview.[1]

### A. *Taint of Witness George*

■ Solomon contends that George's testimony should have been excluded from the

---

**1.** These procedures were undertaken at the suggestion of and with the cooperation of all counsel. At oral argument, we complemented the

attorneys for their professional attitudes in their search for the truth.

trial because his testimony could not be reliable after he underwent a sodium amytal interview. In response, the government asserts that the trial court scrutinized George's sodium amytal interview and carefully applied the teachings of the hypnosis cases in this circuit. Moreover, Solomon was not precluded from presenting evidence to the jury that George's testimony was enhanced by the use of sodium amytal.

The only Ninth Circuit case addressing narcoanalysis excluded a recording of and psychiatric testimony supporting an interview conducted under the influence of sodium pentathol, a precursor of sodium amytal. *Lindsey v. United States,* 16 Alaska 268, 237 F.2d 893 (9th Cir.1956). The case at bar is distinguishable because no testimony concerning the narcoanalysis was offered at trial. Only George's current recollection of events was presented.

In an analogous situation, this circuit has held that the current recollections of witnesses whose memories have been refreshed by hypnosis are admissible, with the fact of hypnosis relevant to credibility only. *United States v. Adams,* 581 F.2d 193, 198–99 (9th Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). We have cautioned, however, that "[g]reat care must be exercised to insure" that statements after hypnosis are not the product of hypnotic suggestion. *Id.*

We find no abuse of discretion in the trial court's ruling to admit the testimony of the witness George. The court's order denying Solomon's Motion to Suppress reflects a careful balancing of reliability against prejudicial dangers:

> The sodium amytal examination of George was performed at a Yakima hospital by Dr. Fred Montgomery, a board certified psychiatrist with training and experience in narco-analysis and hypnosis. Dr. Montgomery had completed a residency in psychiatry and had used sodium amytal on at least fifteen to twenty

occasions in civil and criminal cases during his fifteen years of practice. Also present at the George examination were his attorney, William Murphy, Assistant United States Attorney Robert S. Linnell, and defendant Wesley's attorney Adam Moore. . . .

> There is no evidence to support an inference that George's examination was in any way suggestive or leading. The evidence establishes the contrary. All questions were propounded by Dr. Montgomery in a hospital setting pursuant to medically accepted standards. Questions from attorneys during the examination were written and then forwarded to Dr. Montgomery.[2]

The trial court did not err in refusing to exclude George's testimony. Solomon's conviction is affirmed.

### B. *Wesley's Statements During Narcoanalysis*

Wesley wanted to introduce expert testimony by Dr. Montgomery explaining the effects of sodium amytal and relating the statements that Wesley made while under its influence. The testimony was to rehabilitate Wesley's credibility after the government impeached it with an earlier confession. The trial court held that narcoanalysis was not reliable enough to admit into evidence, but that Dr. Montgomery could testify to the statements made to him by Wesley, without an explanation of the circumstances.

 Expert testimony is admissible if the jury may receive "appreciable help" from it. *United States v. Awkard,* 597 F.2d 667, 669 (9th Cir.), *cert. denied,* 444 U.S. 885, 969, 100 S.Ct. 179, 460, 62 L.Ed.2d 116, 383 (1979). The necessary balancing of the probative value of the evidence against its prejudicial effect is committed to the discretion of the trial court. *Id.* at 669–70; *see* Fed.R.Evid. 702.

---

**2.** While we do not endorse specific procedures to ensure that statements made under narcoanalysis are not the product of suggestion, we believe that a complete stenographic record is desirable for purposes of judicial review. *See Adams,* 581 F.2d at 199 n. 12 (suggested procedural safeguards to be followed in hypnosis cases).

■ Evidence based on a novel scientific technique is admissible if it is generally accepted as a reliable technique among the scientific community. *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923). The admission of a tape recording of narcoanalysis with an expert's explanation of the technique was held prejudicial error by this court in 1956. *Lindsey*, 237 F.2d at 898.

■ Dr. Montgomery testified in the absence of the jury that narcoanalysis is now a generally accepted investigative technique. He stated that safeguards against suggestion of memories by the examiner are essential. He opined that Wesley's interview was safeguarded adequately by production of a transcript, the presence of prosecuting and defense attorneys, and having the examining psychiatrist pose all of the questions.

Dr. Montgomery testified also that narcoanalysis is useful as a source of information that can be valuable if verified through other sources. At one point he testified that it would elicit an accurate statement of subjective memory, but later said that the subject could fabricate memories. He refused to agree that the subject would be more likely to tell the truth under narcoanalysis than if not so treated.

Wesley wanted to use the psychiatric testimony to bolster the credibility of his trial testimony that George started the fatal fire. Wesley's statement shortly after the fire was that he himself set the fire. The probative value of the statement while under narcoanalysis that George was responsible was the drug's tendency to induce truthful statements.

Montgomery admitted that narcoanalysis does not reliably induce truthful statements. The judge's exclusion of the evidence concerning narcoanalysis was not an abuse of discretion. The prejudicial effect of an aura of scientific respectability outweighed the slight probative value of the evidence.

## II. *Speedy Trial*

The Sixth Amendment establishes the right of an accused to a speedy trial. U.S. Const., Amend. VI. Wesley contends that the nine-month delay between his arrest by Tribal authorities and his federal trial violated that constitutional right.

■ Sixth Amendment speedy trial analysis is flexible and functional, weighing four primary factors: the length of the delay, the reasons for it, the defendant's assertion of the right to a speedy trial, and the prejudice to the defendant caused by the delay. *Barker v. Wingo*, 407 U.S. 514, 522, 530–33, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101 (1972); *United States v. Loud Hawk*, 741 F.2d 1184, 1188–89 (9th Cir. 1984). No single factor is necessary or sufficient to establish a violation. *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193.

Wesley was arrested on a Yakima Tribal Court traffic warrant on July 28, 1983, two days after the fatal fire. He was interrogated then about the fire. No federal action was taken against him until his indictment on October 24th. Trial was scheduled for February 14, 1984. After the sodium amytal interviews, Wesley was reindicted on February 13th and trial was delayed until April 16th.

■ The right to a speedy trial is activated when a defendant is federally accused by indictment, arrest, or otherwise. *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). Wesley's federal accusation was the October 24th indictment.

■ Wesley's July 28th arrest by Tribal authorities for violation of Tribal law is irrelevant. It does not matter that federal charges could have been brought then. *United States v. Romero*, 585 F.2d 391, 398 (9th Cir.1978), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979). Wesley's allegation that the FBI was informed of the arrest does not establish an abdication of Tribal control of prosecution to the federal government, which would warrant charging the time in tribal custody against the federal speedy trial right. *See United States v. Cordova*, 537 F.2d 1073, 1076 & n. 2 (9th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976).

From the indictment, there was a delay of about six months before trial. The delay was caused by pretrial motions and the superseding indictment joining Solomon, which followed the sodium amytal interviews of Wesley and the witness George.

██ Wesley filed pretrial motions on November 8, 1983, and after the new indictment the next February. To the extent that the delay was the reasonable result of Wesley's pretrial motions and his volunteering for a sodium amytal interview, it cannot be weighed against the government. *See Loud Hawk,* 741 F.2d at 1192.

██ The two-month delay after the charges against Solomon were joined in the superseding indictment was not unreasonable. Given the conflicting stories of the participants, the advantages of a joint trial justified the short delay. *Cf. Loud Hawk,* 741 F.2d at 1191 (46-month delay to obtain single trial of related charges was unreasonable).

██ Wesley has established no prejudice to his defense based on the delay. The grant of immunity to George and joinder of Solomon were not related to the passage of time, nor did they impair Wesley's right to a fair trial. However, prejudice to the defense is not essential to his Sixth Amendment claim. *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973) (per curiam).

██ The speedy trial clause is primarily intended to prevent personal prejudice. *United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982). Wesley suffered two major forms of personal prejudice: incarceration during the delay and the disruption of life caused by the existence of unresolved criminal charges. *See id.*

██ Although Wesley may have suffered serious personal prejudice, the delay lasted only six months and the reasons for it do not weigh heavily against the government. Wesley's constitutional right to a speedy trial was not violated.

### III. *Double Jeopardy*

Wesley contends that being charged with the premeditated murder of Heath and with arson endangering Heath's life constituted double jeopardy. Because there was only one trial, only the Fifth Amendment prohibition of multiple punishments for one offense is applicable.

██ The power to prescribe punishment for criminal offenses lies solely with Congress. Multiple punishments for one act are unconstitutional only if they exceed the punishment that Congress intended to impose for that act. *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981).

██ If the same act constitutes a violation of two different statutes, the test to determine whether punishment for both offenses may be imposed is "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Bennett,* 702 F.2d 833, 835 (9th Cir.1983). This test is a means of discerning congressional purpose. *Albernaz,* 450 U.S. at 337, 101 S.Ct. at 1141.

██ The elements of the offenses are determinative, even if there is a substantial overlap in their proof. *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Bennett,* 702 F.2d at 835. This circuit has ruled that the statutory elements and not "the particular manner in which the offense was committed" are controlling. *Walker v. Loggins,* 608 F.2d 731, 733 (9th Cir.1979); *accord Pryor v. Rose,* 724 F.2d 525, 529–30 (6th Cir.1984). *But see Illinois v. Vitale,* 447 U.S. 410, 421, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980) (dictum that proof of specific elements is relevant); *Pugliese v. Perrin,* 731 F.2d 85, 89 (1st Cir.1984) (facts relevant).

██ Wesley was charged with first degree murder, killing a human being with malice aforethought and premeditation. 18 U.S.C. § 1111(a). He was charged also with arson, "willfully and maliciously set[ting] fire to or burn[ing] . . . any build-

**1528**

ing," putting a human life in danger. 18 U.S.C. § 81.

Each charge required proof of a fact not required by the other. Only the murder charge required a finding of premeditation and only the arson charge required a finding that Wesley burned a building. Punishment for both crimes was Congress's intent. Wesley's double jeopardy claim is unavailing.

CONCLUSION

The trial judge's treatment of the evidentiary questions raised by narcoanalysis was not an abuse of discretion. Wesley suffered no constitutional speedy trial or double jeopardy violations.

The convictions are affirmed.