892 F.2d 1047
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard R. HARRIS, Defendant-Appellant.
 No. 88-5364.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 4, 1989.
Decided Jan. 5, 1990.
As Corrected Jan. 17, 1990.
 
 Before JAMES R. BROWNING, ALARCON and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Richard R. Harris appeals from a jury conviction on 32 counts of mail fraud, bank fraud, and interstate transportation of forged securities under 18 U.S.C. §§ 2413, 1344, and 1341. We affirm.
 
 I.
 
 3
 Harris, over a five-year period, negotiated over 30 stolen and forged checks worth several million dollars. Between 1983 and 1988, while running his own small tax preparation and insurance business, Harris attempted to clear through his own and his customers' bank accounts counterfeit corporate checks drawn from some 14 different entities. Harris has never contested the fact that the checks he negotiated were stolen or forged; his defense was that he did not know they were bad checks when they came into his possession.
 
 
 4
 Harris successfully withdrew $712,000 from an account against checks stolen from the Wickes Companies in February 1983; deposited to an account in his name checks stolen from Photo Research Co. worth $275,000 in October 1983; delivered checks worth $1.4 million stolen from Computer Power Systems Corp. in January 1984; used stolen checks worth $250,000 to cover loans in November and December of 1984; and negotiated a long list of other stolen and forged checks through 1988. In January, 1988, six cashier's checks from the Mercury Savings and Loan Association were counterfeited, worth over $11 million. Harris deposited two of these checks, and, when interviewed by the FBI in February 1988, had the other four in his possession.
 
 
 5
 It was not established at trial who stole or forged the checks. Harris asserted that one group of checks which he believed were bona fide was given to him by a Mr. Akim, a "Black Muslim." Harris, who is white, speculates that his alleged association with "Black Muslims" may have prejudiced the jury against him.
 
 
 6
 Whatever their source, as Harris attempted to negotiate the checks, he came to the attention of the FBI, which interviewed Harris beginning in 1983 and repeatedly over the following five year period. In these interviews, the FBI informed Harris that the checks he was negotiating were fraudulent. Contradictions emerged in Harris' explanations of his activities. These inconsistencies, combined with Harris' continued negotiation of new groups of stolen checks, ultimately led to his arrest.
 
 
 7
 Harris now appeals the jury verdict, asserting four claims:
 
 
 8
 (1) The evidence did not establish that Harris knew the checks were stolen or forged, and so was legally insufficient to support a conviction;
 
 
 9
 (2) The District Court committed reversible error when it admitted evidence of Harris' possession of the four stolen Mercury Savings checks which he never negotiated;
 
 
 10
 (3) The District Court committed reversible error when it refused to permit voir dire questions about jurors' possible prejudices against Black Muslims;
 
 
 11
 (4) Harris was denied effective assistance of counsel.
 
 
 12
 None of these claims has merit.
 
 II. Sufficiency of the Evidence
 
 13
 When reviewing sufficiency, the court must view the evidence in the light most favorable to the government, and determine if any rational trier of fact could have found guilt beyond a reasonable doubt. United States v. Luttrell, No. 87-5303, slip. op. at 13170 (9th Cir. Nov. 6, 1989); Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).
 
 
 14
 There is no direct evidence of Harris' knowledge or intent. But there is overwhelming circumstantial evidence. First, the sheer volume of Harris' fraudulent transactions undermines the argument that Harris innocently passed bad checks. See United States v. McDonald, 576 F.2d 1350, 1359-60 (9th Cir.1978) (upholding conviction of co-defendant based on circumstantial evidence involving repeated similar illegal conduct), cert. denied, 439 U.S. 830 (1978), cert. denied, 439 U.S. 927 (1978). Second, Harris was put on notice by the FBI that some of the checks he had negotiated were fraudulent, yet he continued to negotiate more stolen checks, not once, but many times. Third, the state showed at trial contradictions in Harris' explanations to the FBI of his check transactions, which supports the conclusion that he was attempting to conceal guilt. See U.S. v. Polizzi, 500 F.2d 856, 877 (9th Cir.1974), cert. denied, 419 U.S. 1120 (1975).
 
 
 15
 Circumstantial evidence is sufficient to establish guilt. U.S. v. Layton, 855 F.2d 1388, 1413 (9th Cir.1988), cert. denied, 109 S.Ct. 1178 (1989). "[T]his court has rejected the notion that it is improper to infer a fact at issue from other facts which have been established by circumstantial evidence." United States v. Nelson, 419 F.2d 1237, 1239 (9th Cir.1969). And, "[t]here comes a point when the innocent explanation is so much less likely than the culpable one that jurors properly could decide" that the defendant's purpose is an illegal one. United States v. Polizzi, 500 F.2d 856, 905 (9th Cir.1974), cert. denied, 419 U.S. 1120 (1975). Given the ongoing pattern of negotiating stolen checks, a reasonable jury could have concluded that Harris was not an innocent victim, but knowingly guilty of the charges brought.
 
 III. Admission of Mercury Savings Checks
 
 16
 Harris asserts that since he only deposited two of six counterfeited Mercury Savings checks, and was indicted only in connection with those checks he actually negotiated, his possession of four other stolen Mercury Savings checks should have been suppressed from evidence.
 
 
 17
 Trial court decisions to admit evidence are reversed only on a showing of abuse of discretion. United States v. Polizzi, 801 F.2d 1543, 1555 (9th Cir.1986); United States v. Solomon, 753 F.2d 1522, 1524 (9th Cir.1985).
 
 
 18
 Under Rule 404(b) of the Federal Rules of Evidence, evidence of other crimes, wrongs, or acts may not be admitted to show propensity to commit a crime, but is admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The 9th Circuit's view is that "other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.1982).
 
 
 19
 Here, the state introduced evidence of the four stolen checks in Harris' possession, as well as the two which Harris deposited, "to negate his claim that he inadvertently became involved in the forged check scheme, and to show common scheme or plan." This is a proper purpose, United States v. Catabran, 836 F.2d 453, 459 (9th Cir.1988), and the trial court did not abuse its discretion by admitting this evidence for this purpose.
 
 IV. Voir Dire
 
 20
 Harris requested that the trial court include in voir dire of the jury two questions on race issues: "1. Have you ever had an experience with a Black person that would affect your ability to fairly and impartially review the facts of this case? If so, please describe that experience. 2. You will hear testimony regarding a Black Muslim group or organization; what are your views regarding Muslims in general, and Black Muslims in particular? How will that affect your participation in this matter?" The trial court refused this request.
 
 
 21
 "In reviewing the conduct of voir dire by the district judge, we will not reverse unless the procedures used or the questions asked were so unreasonable as to constitute an abuse of discretion." U.S. v. Pimentel, 654 F.2d 538, 542 (9th Cir.1981). Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981).
 
 
 22
 No member of the Nation of Islam, nor, so far as the record discloses, any African-American, testified or submitted an affidavit in Harris' case. Further, the "Black Muslim," Mr. Akim, to whom Harris referred, was only one of Harris' alleged suppliers of bad checks; there were numerous other transactions in which there was no alleged association with any African-Americans. There is nothing to indicate that race was in any way a significant factor in the case. The district judge did not abuse his discretion by refusing to inject this issue into the voir dire.
 
 V. Ineffective Assistance of Counsel
 
 23
 Harris asserts that his conviction should be reversed because of ineffective assistance of counsel. Harris focuses on two alleged errors by trial counsel. First, counsel permitted a stipulation that all checks introduced were stolen and forged to be read to the jury without any limiting instruction highlighting that the stipulation was not an admission that Harris had knowledge and intent to pass forged checks when he negotiated them. Second, counsel argued Harris' lack of knowledge by cross-examination of government witnesses rather than by calling Harris or any other defense witnesses to the stand. Additionally, Harris raises a number of differences with counsel's methods of objecting at trial and the level of Harris' own involvement in the preparation and conduct of the trial.
 
 
 24
 Under Strickland v. Washington, 466 U.S. 668 (1984), a claim of ineffective assistance must establish both that an attorney's error was so significant that "the trial cannot be relied on as having produced a just result" 466 U.S. at 686; and that the error created "a reasonable probability that ... the result of the proceeding would have been different." Id. at 694. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.
 
 
 25
 Harris has not met the Strickland burdens. He has made no affirmative showing that his counsel's decisions, including not to put Harris on the stand, were necessarily unreasonable strategic choices. Counsel might well have determined that a greater doubt could be cast on Harris' knowledge and intent by cross-examination of government witnesses than by putting Harris on the stand and allowing Harris to be cross-examined. The Ninth Circuit does not second-guess counsel's decisions where counsel reasonably believed them to be appropriate. Campbell v. Kincheloe, 829 F.2d 1453, 1462 (9th Cir.1987), cert. denied, 109 S.Ct. 380 (1988).
 
 
 26
 Harris has not presented any argument showing that the trial result would have been different but for counsel's decisions, even if erroneous. Harris has pointed to no potential witness, testimony, or other evidence disregarded by his attorney which could have significantly undermined the government's case. Harris' claim of lack of knowledge was put before the jury but rejected due to the circumstantial evidence. Nothing in the record indicates that a limiting instruction on Harris' stipulation to passing stolen checks, or other specific tactical changes in counsel's conduct could have changed that result. Nor has Harris presented any allegation that would give rise to any presumption of prejudice. United States v. Cronic, 466 U.S. 648 (1984). In sum, there is no affirmative showing that Harris' counsel fell outside of "the wide range of professional competence" to which we must defer. United States v. Schaflander, 743 F.2d 714, 722 (9th Cir.1984), cert. denied, 470 U.S. 1058 (1985).
 
 
 27
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3